Matter of Deborah Z. v Alana AA. (2020 NY Slip Op 03832)





Matter of Deborah Z. v Alana AA.


2020 NY Slip Op 03832


Decided on July 9, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 9, 2020

528587

[*1]In the Matter of Deborah Z., Respondent,
v
Alana AA., Appellant, et al., Respondent.

Calendar Date: June 10, 2020

Before: Garry, P.J., Clark, Mulvey, Aarons and Colangelo, JJ.


Ivy M. Schildkraut, Rock Hill, for appellant.
Claire Zimmerman Durst, Kingston, for respondent.
Amy Ingram, Kingston, attorney for the child.



Garry, P.J.
Appeal from an order of the Family Court of Ulster County (McGinty, J.), entered February 5, 2019, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for visitation with respondents' child.
Respondent Alana AA. (hereinafter the mother) and respondent Matthew BB. (hereinafter the father) are the parents of a child (born in 2011). Petitioner (hereinafter the grandmother) is the child's maternal grandmother. The child resided with the grandmother and the maternal grandfather (hereinafter the grandfather) for three years, beginning in 2015, when a temporary custody order was issued, and thereafter pursuant to an amended order of custody issued in 2016. Under the 2016 order, the grandmother, the grandfather and the father shared legal custody, and the grandmother and the grandfather had primary physical custody. In 2018, the mother and the father filed custody modification petitions and the grandmother filed a visitation petition.[FN1] A joint fact-finding hearing was conducted on the three petitions over several days. At the beginning of this hearing, the mother, the father and the attorney for the child conceded that the grandmother had standing to seek visitation, and the father asserted that he supported the grandmother's application for visitation.[FN2] Thereafter, the parties stipulated in open court to a settlement of the custody modification proceedings by which the father would have sole legal and physical custody of the child, and the mother would have scheduled parenting time. In November 2018, Family Court conducted a hearing on the remaining issue of the grandmother's application for visitation. During the hearing, the mother challenged the grandmother's standing, and Family Court rejected the challenge. Following the hearing, the court found that visitation with the grandmother was in the child's best interests and established a visitation schedule. The mother appeals solely from the visitation order.
A grandparent may establish standing to seek visitation with a grandchild by showing the existence of circumstances in "which equity would see fit to intervene" (Domestic Relations Law § 72 [1]). "Standing is established where the grandparent demonstrates that there is a sufficient existing relationship with the grandchild or a sufficient effort to establish one, so that the court perceives it as one deserving the court's intervention" (Matter of Ferguson v Weaver, 165 AD3d 1397, 1397-1398 [2018] [internal quotation marks, brackets, ellipsis and citations omitted]; see Matter of Emanuel S. v Joseph E., 78 NY2d 178, 182 [1991]; Matter of Susan II. v Laura JJ., 176 AD3d 1325, 1327 [2019], lv denied 34 NY3d 909 [2020]). A claim that a party lacks standing can be waived (see Matter of Leonard H., 278 AD2d 762, 763-764 [2000], lv denied 96 NY2d 709 [2001]).
At the outset of the joint fact-finding hearing in July 2018, the mother, through her counsel, confirmed that she had stipulated during an earlier appearance that the grandmother had standing to pursue visitation with the child.[FN3] She repeated this confirmation at a continuance of the hearing in October 2018. At the beginning of the November 2018 visitation hearing, she did not object when Family Court stated that standing had been conceded and that the only issue that remained to be resolved was the child's best interests. Later during the hearing, while the grandmother was being cross-examined, the mother asserted for the first time that the grandmother lacked standing, arguing that the stipulation was not controlling because it was reached before the parties agreed on custody and because the mother had allegedly entered into the agreement while suffering from posttraumatic stress syndrome. The mother had not previously raised the second claim and offered no proof other than her own testimony to support it. Upon review, we agree with Family Court that these claims provided no basis to set aside the stipulation. By conceding the grandmother's standing, the mother waived the right to challenge it (see Matter of Dubiel v Schaefer, 108 AD3d 1093, 1094-1095 [2013]; Matter of Leonard H., 278 AD2d at 763-764).[FN4] Accordingly, Family Court properly denied the mother's challenge and turned to the question of the child's best interests (see Domestic Relations Law § 72 [1]; Matter of Judith DD. v Ahava DD., 172 AD3d 1488, 1488 [2019]).
In determining whether visitation with a grandparent is in a child's best interests, "courts may consider a number of factors, including the nature and quality of the relationship between the grandparent and the child, the grandparent's ability to nurture the child, his or her attitude toward the custodial parents, reasons for any objections to visitation and the child's preference" (Matter of Carol E. v Robert E., 183 AD3d 1154, 1155 [2020] [internal quotation marks, brackets and citation omitted]; see Matter of Judith DD. v Ahava DD., 172 AD3d at 1488-1489; Matter of Wendy KK. v Jennifer KK., 160 AD3d 1059, 1061 [2018]). The testimony established that the child, who was seven years old at the time of the hearing, had spent three years — a substantial portion of her life — living with the grandmother and the grandfather. The grandmother testified that, during that time and with the grandfather's assistance, she "pretty much raised [the child]." The grandmother toilet-trained the child shortly after she arrived and enrolled her in a prekindergarten program and, thereafter, in kindergarten and first grade. The grandmother maintained contact with the child's teachers, attended school open houses and shared attendance at parent-teacher conferences with the father. The grandmother helped the child to do her homework until the child became more independent, and thereafter answered the child's questions, checked her work and helped her to study for tests. The grandmother and grandfather had a nightly routine of reading and telling stories to the child; after the child learned to read, she often read stories to them. The grandmother took the child to the doctor when necessary and encouraged the child's strong interests in music, art and science by enrolling her in music and art classes and in a summer farm camp, providing her with art supplies and taking nature walks with her.
As for the grandmother's relationships with the mother and the father, the testimony established that she and the mother had a contentious relationship and a history of conflict regarding the grandmother's contact with the child. Although the grandmother and the father had also had some disagreements in the past, they were cooperating well at the time of the November 2018 hearing and the father was allowing the grandmother to visit regularly with the child. The grandmother testified that she respected the child's strong bonds with both parents, that she believed it was important for the child to know that she was loved by all of the adults in her life, and that she would continue to encourage the child's relationships with the mother and the father. She said that she understood that the child's parents had priority, but that she also believed that the child needed the continuity of ongoing contact with her, and that a court-ordered schedule would provide consistency for the child and reduce opportunities for conflict.
The mother testified that she was willing to allow visitation between the grandmother and the child if the child wished it. However, she also testified that she did not believe the grandmother should have court-ordered visitation because, as a fit parent, she believed that it was her right and that of the father to decide what visitation should occur. She further stated that she did not believe that weekend visitation should occur during her parenting time because she was trying to reestablish a relationship with the child. The mother acknowledged her acrimonious relationship with the grandmother, describing herself as "very angry" with the grandmother.[FN5] She further acknowledged that she had previously withheld visitation from the grandmother, asserting that she had done so because the grandmother had been violent towards the mother in the child's presence. The grandmother denied this claim and Family Court discredited it, noting that the mother had never raised it before. This Court defers to such credibility assessments (see Matter of LeVar P. v Sherry Q., 181 AD3d 1008, 1009 [2020]).
"[D]espite the animosity between the mother and the grandmother, because the testimony establishes that there was a loving relationship between the grandmother and the child[], the grandmother showed nurturing skills and the mother's objection to visitation was based on an unfounded allegation [of past violence], Family Court's determination that visitation with the grandmother is in the best interests of the child[] has a sound and substantial basis in the record" (Matter of Susan II. v Laura JJ., 176 AD3d at 1328-1329; see Matter of Carol E. v Robert E., 183 AD3d at 1155; Matter of Neilene P. v Lynne Q., 183 AD3d 1023, 1027 [2020]). Despite the mother's objections, the record likewise supports the visitation schedule devised by Family Court, in which the child spends one weekday overnight with the grandmother each week and has a weekend visit each month, during the father's parenting time in even months and the mother's parenting time in odd months. There is a sound and substantial basis for the court's determination that this schedule is in the child's best interests, as it provides the child with regular, consistent contact with the grandmother and "distribute[s] the [grandmother's] monthly visitation evenly between the parents" (Matter of Dubiel v Schaefer, 108 AD3d at 1095).
Clark, Mulvey, Aarons and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: For medical reasons, the grandfather did not participate in the 2018 proceedings.

Footnote 2: The attorney for the child supported the grandmother's application for visitation in Family Court and upon this appeal.

Footnote 3: The appearance at which this stipulation was originally reached is not included in the record.

Footnote 4: We further agree with Family Court that, even if the defense had not been waived, the grandmother's standing to seek visitation was fully established by the record evidence regarding "the nature and extent of the grandparent-grandchild relationship and the nature and basis of the [mother's] objection to visitation" (Matter of Susan II. v Laura JJ., 176 AD3d at 1327 [internal quotation marks and citations omitted]; see Matter of Dubiel v Schaefer, 108 AD3d at 1094-1095). Further, in view of the parties' history of conflict relative to the grandmother's visitation, we reject the mother's claim that no equitable circumstances requiring the court's intervention existed because the father was permitting visitation at the time of the hearing (see Domestic Relations Law § 72 [1]).

Footnote 5: The mother interrupted the grandmother's testimony several times during the hearing, contradicting the grandmother, attempting to argue with her and calling her offensive names.