Matter of Sandra R. v Matthew R. (2020 NY Slip Op 08135)





Matter of Sandra R. v Matthew R.


2020 NY Slip Op 08135


Decided on December 31, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 31, 2020

528766

[*1]In the Matter of Sandra R., Appellant,
v
Matthew R., Respondent. (Proceeding No. 1.) (And Another Related Proceeding.)
In the Matter of Sharon S., Respondent,
v
Matthew R., Respondent, and Sandra R., Appellant. (Proceeding No. 3.)
In the Matter of Matthew R., Respondent,
v
Sandra R., Appellant. (Proceeding No. 4.)

Calendar Date: November 24, 2020

Before: Lynch, J.P., Clark, Aarons, Pritzker and Reynolds Fitzgerald, JJ.


Paul J. Connolly, Delmar, for appellant.
Matthew R., Galway, respondent pro se.
Veronica Reed, Schenectady, for Sharon S., respondent.
Vida L. McCarthy-Cerrito, Schenectady, attorney for the children.



Reynolds Fitzgerald, J.
Appeal from an order of the Family Court of Schenectady County (Blanchfield, J.), entered March 13, 2019, which, among other things, granted petitioner's application, in proceeding No. 4 pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.
Sandra R. (hereinafter the mother) and Matthew R. (hereinafter the father) are the parents of three daughters (born in 2002, 2005 and 2006). Pursuant to a 2012 judgment of divorce, the father was granted sole legal and primary physical custody of the children with alternate weekend/weekday parenting time to the mother. Thereafter, the mother sought to modify the custody and visitation provisions of the judgment of divorce. In September 2015, Family Court (Powers, J.) dismissed the mother's modification petition in its entirety, but ordered the mother to be allowed daily telephone contact with the children. In November 2016, the mother filed a petition for enforcement of the September 2015 order, alleging that the father was denying her daily telephone contact and that the father allowed his wife (hereinafter the stepmother) to yell at the children. Simultaneously, the mother also filed a modification petition, seeking joint [FN1] legal custody and primary placement of the children based on allegations that the father continued to refuse to communicate with her regarding the children's medical appointments and extracurricular activities. In September 2017, Sharon S., the children's maternal grandmother (hereinafter the grandmother), filed a petition seeking custody [FN2] of the children based upon allegations that the children were subjected to sexual advances and abuse by person(s) living in the father's home. In November 2017, Family Court awarded the grandmother temporary physical custody of the children. Although two of the children engaged in parenting time with each parent, the middle child remained in the care and physical custody of the grandmother throughout the hearing and exercised limited parenting time with the father. Also, in November 2017, the father filed a modification petition, alleging that the mother constantly placed the children's emotional and mental well-being at risk. As a result, the father sought to retain sole legal and primary physical custody of the children and for the mother's parenting time to be supervised.
Following a fact-finding hearing held on seven days between March 2018 and November 2018, as well as a Lincoln hearing with each child, Family Court, among other things, dismissed the mother's enforcement petition for failure to prove that the father willfully violated the prior order, dismissed the mother's modification petition, and partially granted the grandmother's custody petition by awarding her visitation with the children. The court also granted the father's modification petition by continuing sole legal and primary physical custody of the children with him and reducing the mother's parenting time and contact, all of which became [*2]supervised. The mother appeals.[FN3]
"A parent seeking to modify an existing custody and parenting time order first must demonstrate that a change in circumstances has occurred since the entry thereof . . . to warrant the court undertaking a best interests analysis" (Matter of Kanya J. v Christopher K., 175 AD3d 760, 761 [2019] [internal quotation marks, brackets and citations omitted], lvs denied 34 NY3d 905, 906 [2019]; see Matter of Kenda UU. v Nicholas VV., 173 AD3d 1295, 1297 [2019]). "[A]ssuming this threshold requirement is met, the parent then must show that modification of the underlying order is necessary to ensure the child[ren]'s continued best interests" (Matter of Sue-Je F. v Alan G., 166 AD3d 1360, 1361 [2018] [internal quotation marks and citations omitted]; see Matter of Turner v Turner, 166 AD3d 1339, 1339 [2018]). Factors to be considered in a best interests analysis include "the past performance and relative fitness of the parents, their willingness to foster a positive relationship between the child[ren] and the other parent, their fidelity to prior court orders and their ability to both provide a stable home environment and further the child[ren]'s overall well-being" (Matter of Carrie ZZ. v Aaron YY., 178 AD3d 1291, 1292 [2019]; see Matter of Clayton J. v Kay-Lyne K., 185 AD3d 1243, 1244 [2020]). As relevant here, "Family Court may properly order supervised visitation if it finds that unsupervised visitation would be detrimental to the children's safety because the parent is either unable or unwilling to discharge his or her parental responsibility properly" (Matter of Donald EE. v Cheyenne EE., 177 AD3d 1112, 1115 [2019] [internal quotation marks and citations omitted], lv denied 35 NY3d 903 [2020]; see Matter of Lynn X. v Donald X., 162 AD3d 1276, 1277-1278 [2018]).
The mother contends that the dismissal of her modification petition, reducing her parenting time and requiring such time with the children to be supervised lacks a sound and substantial basis in the record. Initially, as the parties do not dispute that a change in circumstances occurred since the entry of the September 2015 order, our inquiry is directed to what arrangement is in the children's best interests.[FN4] The mother testified that she is able to communicate with the children, rarely yells at them and has successfully completed mental health counseling and a coparenting class, making her better suited to be the custodial parent. The mother further testified that the father speaks ill of her, filed numerous unfounded Child Protective Services reports, does not take part in the children's lives, allows the stepmother to discipline the children, does not communicate with her, and fails to apprise her of the children's medical appointments and extracurricular activities. The father testified that he limits his communications with the mother because she degrades and insults him and tells the children about the conversations, and he is absent from some [*3]of the children's activities to avoid scenes that the mother has caused in the past. The father also testified that the mother cannot control her anger and berates the children, frequently yells at them for up to an hour, screams vulgarities at the children and insults both him and the stepmother, calling them obscene names, often in the presence of the children.
As part of these proceedings, the parties and children were ordered to undergo psychological evaluations by David Horenstein. The mother, the father and the children were evaluated by Horenstein in March 2010, August 2011 and October 2013. Horenstein testified that he initially diagnosed the mother with borderline personality disorder wherein, in times of conflict, she displays a pervasive pattern of excessive emotional reactivity and impulsivity and she cannot control and moderate her emotions, resulting in instability and inappropriate behavior. These characteristics of her personality disorder continue as it is deeply engrained and highly resistant to change. Hornstein further opined that while the father's behavior has been inappropriate at times, and he has occasionally made comments to the children that should not have been made, he has made a far greater effort to behave appropriately through the course of the last seven years than the mother. Hornstein recommended continuing sole legal custody to the father, with supervised parenting time to the mother.
The record reveals, as Family Court found, that the father provides a stable and relatively peaceful home for the children, whereas the mother rents a room and accesses the grandmother's residence to facilitate her parenting time. Moreover, Horenstein, the grandmother, and the father uniformly testified that the mother's tendency to yell, scream and berate the children creates turmoil and chaos in the children's day-to-day lives. The mother threatened to drive herself and the children into a tree and has threatened to cut off all contact between her and the children and all contact between the children and the father and the grandmother. These ongoing emotional explosions have negatively impacted all of the children, especially the middle child. Based upon the foregoing, and deferring to Family Court's factual and credibility determinations, there is a sound and substantial basis in the record to support Family Court's award of sole legal and primary physical custody to the father and reduced supervised parenting time to the mother (see Matter of Donald EE. v Cheyenne EE., 177 AD3d at 1116; Matter of Melissa MM. v Melody NN., 169 AD3d 1280, 1283 [2019]).
The mother next contends that Family Court erred in awarding the grandmother visitation. In considering the grandmother's petition, Family Court was required to undertake a two-part inquiry. First, the court must find that the grandmother has standing to seek visitation (see Domestic Relations Law § 72 [1]; Matter of Carol E. v Robert E., 183 AD3d 1154, 1154 [2020[*4]]). Once standing is established, then the court must determine if visitation with the grandmother is in the best interests of the children (see Matter of E.S. v P.D., 8 NY3d 150, 157 [2007]; Matter of Neilene P. v Lynne Q., 183 AD3d 1023, 1026 [2020]). "Standing is established where the grandparent demonstrates that there is a sufficient existing relationship with the grandchild[ren] or a sufficient effort to establish one, so that the court perceives it as one deserving the court's intervention" (Matter of Deborah Z. v Alana AA., 185 AD3d 1174, 1175-1176 [2020] [internal quotation marks and citations omitted]).
The grandmother has played a significant role in the children's lives. She attends the children's activities, is involved in transporting the children, participates in family activities and is present when the mother exercises her parenting time, as the mother's parenting time takes place at the grandmother's residence. In addition, since 2017, the middle child has been residing with her. The grandmother also financially supports the children. In our view, the proof demonstrates that the relationship between the grandmother and the children is sufficient to confer standing (see Matter of Vandenburg v Vandenburg, 137 AD3d 1498, 1499 [2016]; Matter of Laudadio v Laudadio, 104 AD3d 1091, 1093 [2013]).
Turning now to whether visitation is in the children's best interests, a number of factors are considered, "including the nature and extent of the existing relationship between the grandparent and child[ren], the basis and reasonableness of the parent's objections, the grandparent's nurturing skills and attitude toward the parent[s], the attorney for the child[ren]'s assessment and the child[ren]'s wishes" (Matter of Susan II. v Laura JJ., 176 AD3d 1325, 1327 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 909 [2020]). Hornstein testified that there have been numerous instances where the grandmother has had to step in and quiet things down for the sake of the children. Specifically, the grandmother stepped in at a crucial time to provide the children with cohesiveness, by having the children reside with her and renting an apartment to ensure that the children could remain in the same school district. The record also reveals that the grandmother plays a large part in the children's lives, especially in recent years helping the children cope with family chaos. Finally, the attorney for the children advocates for the grandmother to have visitation. In these circumstances, we find that a sound an substantial basis exists in the record to support Family Court's determination that visitation with the grandmother is in the children's best interests (see Matter of Deborah Z. v Alana AA., 185 AD3d at 1178; Matter of Neilene P. v Lynne Q., 183 AD3d at 1027).
Lastly, the mother and the attorney for the children claim that Family Court erred in dismissing the mother's enforcement petition. "The proponent of a violation [*5]petition must establish, by clear and convincing evidence, that there was a lawful court order in effect with a clear and unequivocal mandate, that the person who allegedly violated the order had actual knowledge of the order's terms, that the alleged violator's actions or failure to act defeated, impaired, impeded or prejudiced a right of the proponent and that the alleged violation was willful" (Matter of Carl KK. v Michelle JJ., 175 AD3d 1627, 1628 [2019] [citations omitted]; see Matter of Kanya J. v Christopher K., 175 AD3d at 764). The September 2015 order states that "the mother shall have the right to daily telephone contact with the children at a reasonable time and for a reasonable duration, provided no discussion of adult issues is discussed." Although, the mother implies that the order directs the father to ensure that these calls take place, the order does not issue a clear and unequivocal mandate upon the father to do so (see Matter of Abram v Abram, 145 AD3d 1377, 1379 [2016]; Matter of Miller v Miller, 77 AD3d 1064, 1065 [2010], lv dismissed and denied 16 NY3d 737 [2011]). "Family Court's finding will be disturbed only if it is an abuse of discretion" (Matter of Dorsey v De'Loache, 150 AD3d 1420, 1423-1424 [2017] [internal quotation marks and citation omitted]).
Family Court found, and the record supports, that although the father admitted taking the cell phones from the two younger children, he did so to limit their use of electronics and to prevent certain conflicts arising from the manner in which the children used their phones; he expressly denied preventing the children from calling their mother. The father's testimony was corroborated by a Family Ct Act § 1034 investigative report that explained that the children often get caught up in other activities and forget to call their mother. Family Court detailed the basis for its finding that the father did not willfully violate the order, and we find that it did not abuse its discretion in dismissing the violation petition (see Matter of Simmes v Hotaling, 166 AD3d 1329, 1331 [2018], lv dismissed and denied 33 NY3d 1043 [2019]; Matter of Sanchez v Santiago, 154 AD3d 1099, 1100 [2017]).
Lynch, J.P., Clark, Aarons and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The mother's custody modification petition sought joint custody, but she indicated that sole custody was "prob[ab]ly the only option."

Footnote 2: Although the grandmother's petition sought "temporary custody or the right to foster [the children]," the grandmother verbally amended her petition to conform to the evidence, seeking, in the alternative, visitation with the children.

Footnote 3: As the oldest child turned 18 years old during the pendency of this appeal, the mother's appeal as it pertains to this child is moot (see Matter of Aaron K. v Laurie K., 187 AD3d 1423, 1426 n [2020]; Matter of Mauro NN. v Michelle NN., 172 AD3d 1493, 1495 n [2019]).

Footnote 4: The attorney for the children initially advocated for the grandmother to be awarded custody of the children. On appeal, the attorney for the children advocates that Family Court erred in dismissing the mother's modification petition and in reducing and ordering supervised parenting time.