Matter of Melissa X. v Javon Y. (2021 NY Slip Op 07336)





Matter of Melissa X. v Javon Y.


2021 NY Slip Op 07336


Decided on December 23, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 23, 2021

532399
[*1]In the Matter of Melissa X., Respondent,
v
Javon Y. et al., Appellants.

Calendar Date:November 22, 2021

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Michelle I. Rosien, Philmont, for appellants.
Cliff Gordon, Monticello, for respondent.
Ivy M. Schildkraut, Rock Hill, attorney for the child.



Colangelo, J.
Appeal from an order of the Family Court of Sullivan County (Meddaugh, J.), entered October 8, 2020, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for visitation with respondents' child.
Respondent Javon Y. (hereinafter the father) and respondent Savannah Z. (hereinafter the mother) are the parents of a child (born in 2019). Petitioner (hereinafter the grandmother) is the child's maternal grandmother. The child resided with the mother and the grandmother at the grandmother's home for approximately five months, from shortly after her birth until August 2019, when, following an argument between the mother and the grandmother, the mother left with the child. In October 2019, the grandmother commenced this proceeding seeking visitation with the child. A fact-finding hearing was conducted, after which Family Court found that the grandmother had standing and that visitation with the grandmother was in the child's best interests. The court awarded the grandmother one seven-hour, unsupervised visit with the child per month and weekly contact by phone or video. The mother and the father appeal. We affirm.
"A grandparent may establish standing to seek visitation with a grandchild by showing the existence of circumstances in 'which equity would see fit to intervene'" (Matter of Deborah Z. v Alana AA., 185 AD3d 1174, 1175 [2020], quoting Domestic Relations Law § 72 [1]; see Matter of Wilson v McGlinchey, 2 NY3d 375, 380 [2004]; Matter of Neilene P. v Lynne Q., 183 AD3d 1023, 1024 [2020]). This showing can be made by establishing "'a sufficient existing relationship with their grandchild[], or in cases where that has been frustrated by the parents, a sufficient effort to establish one, so that the court perceives it as one deserving the court's intervention'" (Matter of Susan II. v Laura JJ., 176 AD3d 1325, 1327 [2019], lv denied 34 NY3d 909 [2020], quoting Matter of Emanuel S. v Joseph E., 78 NY2d 178, 182 [1991]; accord Matter of Sandra R. v Matthew R., 189 AD3d 1995, 1999 [2020], lv dismissed and denied 36 NY3d 1077 [2021]; see Matter of Ferguson v Weaver, 165 AD3d 1397, 1397-1398 [2018]). As such, "essential components of the standing inquiry are the nature and extent of the grandparent-grandchild relationship and the nature and basis of the parent's objection to visitation" (Matter of Neilene P. v Lynne Q., 183 AD3d at 1024-1025 [internal quotation marks and citation omitted]; see Matter of Laudadio v Laudadio, 104 AD3d 1091, 1092 [2013]).
With regard to standing, the testimony by the grandmother and the mother established that the mother and the child lived with her for approximately the first five months after the child was born. The grandmother testified that the mother suffered from postpartum depression and that "[she] spent all the time with [her] granddaughter," as "[she] was with her every single day." The grandmother further testified that "[she] would bathe her, [she] would change [*2]her diaper, [she] would feed her, [and] we would play with her." She also took the child to two wellness medical appointments for shots. During a portion of this time, the mother was home with the child while the grandmother was at work. The grandmother also testified that, at the time the mother and the child came home from the hospital, she was working and was solely responsible for paying the rent. The mother returned to work when the child was three months old, working overnight shifts, and the grandmother stayed home and took over almost full responsibility for caring for the child, with no supervision. At times, the child went on a day or weekend visit with the father and paternal grandmother. The grandmother testified that, initially, she was paying all of the expenses at her apartment, but there came a time, when the mother was working, that she charged the mother $400 per month to care for the child.
According to the grandmother's testimony, the mother left her apartment with the child on or about September 1, 2019 following an argument that ensued when she acceded to the mother's request that the father stay overnight in her apartment, but she would not allow him to stay in the room that the mother shared with the child. The mother testified that, as a result of the argument, the grandmother kicked her out of the apartment. The grandmother testified that she has tried to contact the mother, but the mother has essentially cut off all contact with her and has not allowed her to see the child for over a year. In addition to efforts made to contact the mother, the grandmother requested visitation, unsuccessfully, during the pendency of this proceeding. The fact that no visitation occurred after August or September 2019 due solely to the mother's actions does not undermine the grandmother's efforts to maintain a relationship with the child. We note that this petition was filed in October 2019, shortly after the mother refused to have contact with the grandmother. Based on this testimony, we find that Family Court correctly found that the grandmother has standing to seek visitation. The grandmother had established a relationship with the child and, although there were complaints about the condition of the grandmother's home, the mother voluntarily stayed in the home with the child and permitted the grandmother to care for the child (see Matter of Sandra R. v Matthew R., 189 AD3d at 1999; Matter of Deborah Z. v Alana AA., 185 AD3d at 1175).
We also agree with Family Court's determination that visitation with the grandmother is in the child's best interests. The mother's opposition to visitation is based on her claim that the grandmother associated with undesirable people, is toxic and is mentally abusive to her whenever they see each other and, since it has been over a year, the child does not know the grandmother. As Family Court properly recognized, an acrimonious relationship is generally not sufficient cause to deny visitation[*3], because, "'in cases where grandparents must use legal procedures to obtain visitation rights, some degree of animosity exists between them and the party having custody of the child or children'" (Matter of E.S. v P.D., 8 NY3d 150, 157 [2007], quoting Lo Presti v Lo Presti, 40 NY2d 522, 526 [1976]). Another objection to visitation centered around the condition of the grandmother's apartment. Witnesses, including the mother and the father, testified that the rooms in the grandmother's apartment were dirty, cluttered and messy, and the apartment smelled strongly from dog urine and from a dirty tank that housed the grandmother's turtle. Despite these conditions, the mother testified that she was satisfied with the grandmother taking care of the child in the apartment. Moreover, the record reflects that the mother did not willingly flee the apartment due to its messy and allegedly unsanitary condition, but rather due to an argument about the child's father and general animosity between the mother and the grandmother.
"In gauging best interests, courts may consider a number of factors, includ[ing] the nature and quality of the relationship between the grandparent and the child[], the ability to nurture the child[], his or her attitude toward the custodial parent[s], reasons for any objections to visitation and the child[]'s preference" (Matter of Carol E. v Robert E., 183 AD3d 1154, 1155 [2020] [internal quotation marks and citations omitted]). "The most significant consideration . . . is the nature and quality of the relationship between the grandparent and the child" (Matter of Velez v White, 136 AD3d 1235, 1236 [2016] [citations omitted]). "Applying this standard, we conclude that the record provides a sound and substantial basis for Family Court's determination that it was in the child's best interests to grant the grandmother visitation rights" (Matter of Carol E. v Robert E., 183 AD3d at 1155 [citation omitted]). We adhere to this determination notwithstanding the opposition of the attorney for the child on this appeal.
Finally, "Family Court has broad discretion in determining an appropriate visitation schedule, and its findings in that regard are entitled to great deference unless they lack a sound and substantial basis in the record" (Matter of Williams v Patinka, 144 AD3d 1432, 1434 [2016] [internal quotation marks and citations omitted]). Based upon the record before us, there is a sound and substantial basis to support Family Court's visitation schedule (see Matter of Carol E. v Robert E., 183 AD3d at 1155).
Garry, P.J., Clark, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.