Matter of Anne MM. v Vasiliki NN. (2022 NY Slip Op 02161)





Matter of Anne MM. v Vasiliki NN.


2022 NY Slip Op 02161


Decided on March 31, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:March 31, 2022

530769 531470
[*1]In the Matter of Anne MM. et al., Respondents,
v
Vasiliki NN., Appellant, and Christopher OO., Respondent. (And Another Related Proceeding.)

Calendar Date:February 10, 2022

Before:Egan Jr., J.P., Clark, Aarons, Reynolds Fitzgerald and McShan, JJ.

Bartlett, Pontiff, Stewart & Rhodes, PC, Glens Falls (Jessica Hugabone Vinson of counsel), for appellant.
Donnellan Law, PLLC, Ballston Spa (Katherine L. Mastaitis of counsel), for Anne MM. and another, respondents.
Cheryl L. Sovern, Malta, for Christopher OO., respondent.
Elena Jaffe Tastensen, Saratoga Springs, attorney for the child.



Reynolds Fitzgerald, J.
Appeals from an order and an amended order of the Family Court of Saratoga County (Pelagalli, J.), entered December 30, 2019 and March 26, 2020, which, among other things, granted petitioners' application, in a proceeding pursuant to Family Ct Act article 6, for custody of respondents' child.
Respondent Vasiliki NN. (hereinafter the mother) and respondent Christopher OO. (hereinafter the father) are the parents of a child (born 2014). In December 2017, the father was arrested for, among other things, possessing drugs and drug paraphernalia and endangering the welfare of a child, after he was found asleep behind the wheel of a parked vehicle containing the child. Petitioners, the child's maternal grandparents (hereinafter the grandparents), filed two petitions in January 2018, one seeking custody of the child and the other seeking visitation with the child. In February 2018, Family Court ordered that the grandparents were to immediately have sole legal and physical custody of the child. Thereafter, in November 2018, Family Court entered an order of protection directing the mother to ensure that the father not have contact with the child and that the paternal grandmother supervise the father's parenting time. Family Court subsequently entered a temporary order of custody and parenting time, awarding joint legal custody to the mother and the grandparents with primary physical custody of the child awarded to the grandparents.
Following a fact-finding hearing, Family Court, by order entered in December 2019, found that the grandparents had established extraordinary circumstances as to the father but not the mother but nevertheless granted both petitions awarding them and the mother joint legal and shared physical custody of the child, with the grandparents having physical custody of the child every Friday through Sunday during the school year and every Thursday through Sunday during the summer. In January 2020, Family Court issued an amended order of protection against the father, which directed the mother to ensure that the father have no contact with the child until her eighteenth birthday. Subsequently, in March 2020, Family Court issued an amended order directing the mother to, among other things, provide the court with a copy of her residential lease or a notarized statement from her landlord and that the parties continue to keep each other updated as to any change in residence address.[FN1] The mother appeals from the December 2019 order and the March 2020 amended order.
As a threshold matter, this Court takes judicial notice of an August 2021 order, entered upon consent of the parties, which provided that the grandparents no longer have legal custody of the child but will continue to be entitled to grandparent "visitation" as set forth in the December 2019 order. However, due to the implications of the August 2021 order, it is uncertain if Family Court, in its December 2019 order, awarded the grandparents a shared physical custody arrangement [*2]as part of the custody petition or an extensive visitation arrangement pursuant to the visitation petition. Further, as the August 2021 order does not purport to supersede or vacate the December 2019 order, nor does it modify that portion of the December 2019 order as awarded the grandparents physical custody and/or visitation of the child, which the mother is challenging, the mother's challenges to those parts of the December 2019 order are not moot (see Matter of Nicole B. v Franklin A., 185 AD3d 1166, 1166 [2020]; Matter of William O. v Wanda A., 151 AD3d 1189, 1190 [2017], lv denied 30 NY3d 902 [2017]).[FN2]
Turning to the question of physical custody, the mother initially contends that the grandparents lacked standing to seek physical custody in their petition because they failed to satisfy their heavy burden of establishing the presence of extraordinary circumstances. "A parent has a claim of custody to his or her child that is superior to all other persons, unless a nonparent establishes that there has been surrender, abandonment, persistent neglect, unfitness, an extended disruption of custody or other like extraordinary circumstances" (Matter of Donna SS. v Amy TT., 149 AD3d 1211, 1212 [2017] [internal quotation marks and citations omitted]; see Matter of William O. v Wanda A., 151 AD3d at 1191). "That said, the parent in question may be supplanted where he or she engages in gross misconduct or other behavior evincing an utter indifference and irresponsibility relative to the parental role. Examples of behaviors that may, in the aggregate, rise to the level of extraordinary circumstances include allowing the child[] to live in squalor, failing to address serious substance abuse or mental health issues, instability in the parent's housing or employment situation, the questionable use of corporal punishment as a means of discipline and other similar behaviors that reflect the parent's overall pattern of placing his or her own interests and personal relationships ahead of the child[]" (Matter of Renee TT. v Britney UU., 133 AD3d 1101, 1102-1103 [2015] [internal quotation marks, brackets and citations omitted]). "Once extraordinary circumstances have been established, Family Court may then proceed to the issue of whether an award of custody to the nonparent, rather than the parent, is in the child's best interests" (Matter of Michael P. v Joyce Q., 191 AD3d 1199, 1200 [2021] [internal quotation marks and citation omitted], lvs denied 37 NY3d 901, 902 [2021]; Matter of Shaver v Bolster, 155 AD3d 1368, 1369 [2017]).
The record reflects that the child was not subject to surrender, abandonment or persistent neglect nor is the mother unfit. Although the father was the subject of an indicated report relative to the incident when he fell asleep in his vehicle with drug paraphernalia near the child, a finding of neglect was not indicated as to the mother. Moreover, this was an isolated incident and not part of a pattern of persistent neglect. [*3]Although there was evidence that the father has a history of drug abuse and criminal convictions, the mother has neither. There was no evidence that the child was at risk of being harmed while in the mother's care; instead, the record demonstrates that the mother provided appropriate shelter, clothing, food and medical attention to the child. Additionally, the mother did not allow the father to have contact with the child in accordance with Family Court's orders. As Family Court found that the grandparents did not meet their burden on extraordinary circumstances as to the mother, the court erred in engaging in a best interests analysis and, instead, the custody petition should have been dismissed (see Matter of Hawkins v O'Dell, 166 AD3d 1438, 1440-1441 [2018]; Matter of Donna SS. v Amy TT., 149 AD3d at 1215; Matter of Brown v Comer, 136 AD3d 1173, 1175-1176 [2016]; Matter of Burton v Barrett, 104 AD3d 1084, 1086 [2013]).
Turning to the visitation petition, the mother contends that, as with their petition for custody, the grandparents lack standing to seek visitation. "Pursuant to Domestic Relations Law § 72, grandparents may seek visitation with their grandchild[] where they can establish circumstances in which equity would see fit to intervene" (Matter of Susan II. v Laura JJ., 176 AD3d 1325, 1327 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 909 [2020]; see Matter of Melissa X. v Javon Y., 200 AD3d 1451, 1451 [2021]). "This showing can be made by establishing a sufficient existing relationship with their grandchild, or in cases where that has been frustrated by the parents, a sufficient effort to establish one, so that the court perceives it as one deserving the court's intervention" (Matter of Melissa X. v Javon Y., 200 AD3d at 1451 [internal quotation marks, brackets and citations omitted]). "Notably, essential components of the standing inquiry are the nature and extent of the grandparent-grandchild relationship and the nature and basis of the parent's objection to visitation. If standing is established, the court will then consider whether such visitation is in [the] child['s] best interests, which requires evaluation of a variety of factors, including the nature and extent of the existing relationship between the grandparent[s] and child[], the basis and reasonableness of the parent's objections, the grandparent[s'] nurturing skills and attitude toward the parent, the attorney for the child's assessment and the child[]'s wishes" (Matter of Susan II. v Laura JJ., 176 AD3d at 1327 [internal quotation marks, brackets and citations omitted]).
The hearing testimony established that the grandparents, the mother and the child resided together in Massachusetts from August 2015 to December 2015. In December 2015, the mother and the child moved to a nearby apartment to live with the father following his release from prison. Between December 2015 and April 2017, the grandparents cared for the child several days [*4]every week. Additionally, the parties gathered together for holidays, birthdays and other family events. Following an argument in April 2017, the mother and the father moved from Massachusetts to New York with the child, and the grandparents did not have contact with the child until February 2018. However, the grandparents attempted to contact the mother numerous times by telephone, email and through Facebook. It is evident from the testimony that the grandparents have a loving relationship with the child, they spent substantial time with her and they have appropriately cared for her. Although the grandparents did not have contact with the child for almost one year prior to filing the petitions, due to the mother ceasing all communication with them, the grandparents made repeated efforts to continue their relationship with the child. Accordingly, Family Court properly determined that the grandparents established standing to seek visitation with the child (see Matter of Carol E. v Robert E., 183 AD3d 1154, 1155-1156 [2020]; Matter of Neilene P. v Lynne Q., 183 AD3d 1023, 1026 [2020]).
As standing was established, we turn to the best interests determination, which requires consideration of a variety of factors, including the nature and extent of the existing relationship between the grandparents and the child, the basis and reasonableness of the parent's objections, the grandparents' nurturing skills and attitude toward the parent, the attorney for the child's assessment and, if applicable, the child's wishes (see Matter of Deborah Z. v Alana AA., 185 AD3d 1174, 1176-1177 [2020]; Matter of Neilene P. v Lynne Q., 183 AD3d at 1026; Matter of Judith DD. v Ahava DD., 172 AD3d 1488, 1488-1489 [2019]). The mother objects to the grandparents' request for visitation based upon the mother's supposition that the grandparents are overbearing and controlling and they are unable to communicate. The testimony, however, reveals that the grandparents have a loving relationship with the child and have nurtured, supported and appropriately cared for her. The attorney for the child also supports visitation between the grandparents and the child. Having accorded great deference to Family Court's findings and credibility determinations (see e.g. Matter of Neilene P. v Lynne Q., 183 AD3d at 1027), we conclude that the record provides a sound and substantial basis for Family Court's determination that visitation is in the child's best interests (see Matter of Melissa X. v Javon Y., 200 AD3d at 1454; Matter of Carol E. v Robert E., 183 AD3d at 1156).
The mother also asserts that Family Court's finding that the grandparents are entitled to extensive visitation with the child lacks a sound and substantial basis. We agree. "Family Court has broad discretion in determining an appropriate visitation schedule, and its findings in that regard are entitled to great deference unless they lack a sound and substantial basis in the record" (Matter of Melissa X. v Javon [*5]Y., 200 AD3d at 1454 [internal quotation marks and citations omitted]). The grandparents have visitation with the child every weekend from Friday evening until Sunday during the school year and every Thursday until Sunday during the summer. The grandparents' residence is located in Massachusetts, four hours from the mother's residence. This schedule is extremely disruptive, deprives the mother of significant quality time with the child and does not allow the child to become involved in activities which take place on the weekend. In light of the fact that the parties are currently involved in Family Court proceedings in Warren County, and because of the amount of time that has elapsed since the December 2019 order, the matter must be remitted for a hearing to determine an appropriate visitation schedule for the grandparents (see generally Matter of Ayesha FF. v Evelyn EE., 160 AD3d 1068, 1070-1071 [2018], lv dismissed and denied 31 NY3d 1131 [2018]; Matter of Monroe v Monroe, 154 AD3d 1110, 1112 [2017]; Matter of Fish v Fish, 112 AD3d 1161, 1163 [2013]). In light of our determination with respect to custody, the March 2020 amended order is reversed.
Egan Jr., J.P., Clark, Aarons and McShan, JJ., concur.
ORDERED that the order entered December 30, 2019 is modified, on the law, without costs, by reversing so much thereof as granted the custody petition; said petition dismissed and matter remitted to the Family Court of Warren County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.
ORDERED that the amended order entered March 26, 2020 is reversed, without costs.



Footnotes

Footnote 1: The March 2020 order continued the terms of the December 2019 order to the extent that it was not inconsistent with its terms.

Footnote 2: Conversely, as a separate August 2021 order, upon consent of the parties, vacated the amended order of protection, the mother's challenge with regard thereto is now moot (see Matter of Ramon U. v Nicia V., 162 AD3d 1252, 1252 [2018]; Matter of Cameron ZZ. v Ashton B., 148 AD3d 1234, 1234 [2017]).