Matter of Dawn II. v Natyssa JJ. (2024 NY Slip Op 00098)

Matter of Dawn II. v Natyssa JJ.

2024 NY Slip Op 00098

Decided on January 11, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 11, 2024

535048
[*1]In the Matter of Dawn II., Appellant,
v
Natyssa JJ. et al., Respondents.

Calendar Date:November 21, 2023

Before:Garry, P.J., Lynch, Ceresia, Fisher and Powers, JJ.

Rural Law Center of New York, Inc., Plattsburgh (Keith F. Schockmel of counsel), for appellant.
Cheryl L. Sovern, Malta, for Natyssa JJ., respondent.
Lisa A. Burgess, Indian Lake, for Norman KK., respondent.
Alexandra G. Verrigni, Rexford, attorney for the child.

Powers, J.
Appeal from an order of the Family Court of Warren County (Paulette M. Kershko, J.), entered January 24, 2022, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for visitation with respondents' child.
Respondent Natyssa JJ. (hereinafter the mother) and respondent Norman KK. (hereinafter the father) are the parents of a daughter (born in 2015) and share joint legal custody with primary physical custody to the mother. Petitioner (hereinafter the grandmother) is the paternal grandmother of the child. In April 2021, the grandmother filed a petition for visitation with the child. Following a hearing, Family Court dismissed the petition. The grandmother appeals.
Preliminarily, we note that the grandmother's contentions as to Family Court's issuance of a refrain from order of protection pursuant to Family Ct Act article 8 are not before us owing to her failure to appeal from that order entered in July 2021.
We also note that Family Court's finding that the grandmother established statutory standing to seek visitation has not been challenged and, therefore, is not before us for review. A claim that a party lacks standing can be waived (see Matter of Deborah Z. v Alana AA., 185 AD3d 1174, 1176 [3d Dept 2020]; Matter of Leonard H., 278 AD2d 762, 763-764 [3d Dept 2000], lv denied 96 NY2d 709 [2001]).
Turning to the best interests analysis, we find a sound and substantial basis in the record for Family Court's determination that an order requiring visitation with the grandmother would not serve the child's best interests (compare Matter of Susan II. v Laura JJ., 176 AD3d 1325, 1328-1329 [3d Dept 2019], lv denied 34 NY3d 909 [2020]). In determining whether visitation with a grandparent is in a child's best interests, "courts may consider a number of factors, including the nature and quality of the relationship between the grandparent and the child, the grandparent's ability to nurture the child, his or her attitude toward the custodial parents, reasons for any objections to visitation and the child's preference" (Matter of Carol E. v Robert E., 183 AD3d 1154, 1155 [3d Dept 2020] [internal quotation marks, brackets and citation omitted]; see Matter of Wendy KK. v Jennifer KK., 160 AD3d 1059, 1061 [3d Dept 2018]). "The most significant consideration in rendering this determination is the nature and quality of the relationship between the grandparent and the child" (Matter of Velez v White, 136 AD3d 1235, 1236 [3d Dept 2016] [citations omitted]). Other considerations include "the nature and extent of the existing relationship between the grandparent[ ] and the child, the basis and reasonableness of the parent's objections, the grandparent['s] nurturing skills and attitude toward the parent, the attorney for the child's assessment and the child's wishes" (Matter of Anne MM. v Vasiliki NN.,203 AD3d 1476, 1480 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]).
The testimony established that [*2]the grandmother had a close relationship with the child for the first five years of the child's life, during which time the grandmother frequently cared for the child, in the grandmother's home, on weekends, overnights, special occasions and other times when the mother was unavailable. The grandmother also allowed the father to reside in her home pursuant to a prior order that directed that his parenting time occur in that residence. Owing to the warm relationship between the grandmother and the mother, the grandmother continued to care for the child in the grandmother's home, even after the father vacated the grandmother's residence, and abided the same schedule that had been afforded for the father. In January 2021, one of the grandmother's dogs, a German Shepard, who "nipped" the child when the child was age two and was, for the most part, confined to a bedroom during the child's visits, again bit the child, causing four deep puncture wounds which required emergency medical treatment and two months of follow-up medical care. The testimony established that the grandmother was profusely apologetic and immediately had the dog euthanized. For several weeks thereafter, the mother continued to allow the grandmother to spend time with the child, during which time both the mother and the grandmother recognized the child to be "traumatized." During one such visit in April 2021 at the mother's home, an argument ensued during which the mother blamed the grandmother for the child's trauma and informed the grandmother that she would no longer be welcome or see the child, causing the child, who was present during the escalation, to cry "uncontrollably." Shortly thereafter, the grandmother sought to deliver a birthday gift for the child and, after being refused entry, attempted to enter the mother's home resulting in the mother calling the police. The mother testified that she "feared for her life" during this incident and that the child witnessed this altercation from a window.
"[A]n acrimonious relationship is generally not sufficient cause to deny visitation, because, in cases where grandparents must use legal procedures to obtain visitation rights, some degree of animosity exists between them and the party having custody of the child[ ]" (Matter of Melissa X. v Javon Y.,200 AD3d 1451, 1453 [3d Dept 2021] [internal quotation marks and citations omitted]; see Matter of Neilene P. v Lynne Q., 183 AD3d 1023, 1027 [3d Dept 2020]). However, at the time of the hearing, the grandmother had not had contact with the child for seven months and, although both parents recognized that this was a loss for the child, the attorney for the child advocated against court-ordered visitation as the child had become fearful and "uncomfortable" to be around the grandmother or the grandmother's boyfriend. Finding that both parents were supportive of gradually reintroducing the grandmother into the child's life but favored it being facilitated during the father's parenting time [*3]or, alternatively, through therapeutic contact by a designated psychologist, Family Court concluded that an order was contrary to the child's best interests at this time. On this record, we decline to disturb Family Court's considerable discretion.
Garry, P.J., Lynch, Ceresia and Fisher, JJ., concur.
ORDERED that the order is affirmed, without costs.