Matter of Marilyn Y. v Carmella Z. (2024 NY Slip Op 04425)

Matter of Marilyn Y. v Carmella Z.

2024 NY Slip Op 04425

Decided on September 12, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 12, 2024

CV-23-0783
[*1]In the Matter of Marilyn Y., Respondent,
v
Carmella Z., Appellant.

Calendar Date:August 15, 2024

Before:Garry, P.J., Egan Jr., Clark, Fisher and McShan, JJ.

Sandra M. Colatosti, Albany, for appellant.
Carl D. Birman, Albany, for respondent.
Karen R. Crandall, Schenectady, attorney for the child.

Fisher, J.
Appeal from an order of the Family Court of Schenectady County (Brendon D. Dupree, Referee), entered April 3, 2023, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for visitation with respondent's child.
Respondent (hereinafter the mother) is the mother of the subject child (born in 2020), and petitioner (hereinafter the grandmother) is the child's paternal grandmother. The father of the child unexpectedly passed away in October 2021. Although the grandmother and the mother initially consoled each other, the father's passing subsequently created tension between members of the grandmother's family and the mother. After the grandmother visited the child in November 2021, her other requests for visitation were either denied or ignored by the mother. In April 2022, the grandmother commenced this proceeding seeking visitation with the child. Following a fact-finding hearing, Family Court awarded biweekly unsupervised visitation on Saturdays to the grandmother. The mother appeals.
Where either parent of a minor child has died, a grandparent of such child has "an absolute right" to apply for visitation (Matter of Emanuel S. v Joseph E., 78 NY2d 178, 181 [1991]), and the court "may make such directions as the best interest of the child may require" (Domestic Relations Law § 72 [1]; see Matter of Susan II. v Laura JJ., 176 AD3d 1325, 1327 [3d Dept 2019], lv denied 34 NY3d 909 [2020]). In evaluating whether visitation with a grandparent is in a child's best interests, where "[t]he most significant consideration . . . is the nature and quality of the relationship between the grandparent and the child" (Matter of Velez v White, 136 AD3d 1235, 1236 [3d Dept 2016]), courts may consider a variety of factors, including "the nature and extent of the existing relationship between the grandparent and the child, the basis and reasonableness of the parent's objections, the grandparent's nurturing skills and attitude toward the parent, the attorney for the child's assessment and the child's wishes" (Matter of Dawn II. v Natyssa JJ., 223 AD3d 982, 983 [3d Dept 2024] [internal quotation marks, brackets and citations omitted]). In making such determination, although "there is a presumption that a fit parent's decisions are in the best interests of a child" (Matter of Daniel RR. v Heather RR., 221 AD3d 1301, 1302-1303 [3d Dept 2023]), "neither the presumed wishes of the child nor the existence of animosity between the parent and the grandparent is a proper reason for denial of visitation in isolation" (Matter of Articolo v Grasso, 132 AD3d 1193, 1194 [3d Dept 2015] [internal quotation marks, brackets and citation omitted]).
During the fact-finding hearing, the grandmother testified that she supported the mother when she was pregnant with the child, attending the baby shower and gender reveal party, while also purchasing diapers and clothes for the child. Although the grandmother was not present for the birth of the child due [*2]to the COVID-19 pandemic,[FN1] the grandmother testified that she routinely saw the child every two to three weeks and that her relationship with the mother was cordial. Following the father's passing, the grandmother exchanged words of consolation with the mother, offering to be a resource, checking in with the mother during the grieving process while still respecting her requests for privacy, and by offering prayers and well-wishes. The documentary evidence offered at the hearing revealed that the grandmother's regular requests to visit with the child were denied or ignored by the mother.
For her part, the mother testified that she had a cordial relationship with the grandmother before the father's passing. However, she also testified that she did not try to build a relationship with the grandmother because the grandmother had said at an event that she would "never" get close to the mother because of the father's prior relationships. The mother also testified that a paternal aunt authored a social media post that upset her, and that the mother's efforts to have the child meet with the grandmother were only "out of respect" for the father. In doing so, the mother acknowledged that the grandmother would still see the child, hold and interact with the child, and attended the child's first birthday party. According to the mother, this relationship changed after the father's death, when she separated herself from the other members of the family — particularly the paternal side. Specifically, the mother testified that the grandmother did not see the child, did not try to visit, did not attend the child's second birthday party and did not send cards or gifts to the child for the holidays or the child's birthday. When the mother did bring the child to a family event where the grandmother was present, the mother testified that the grandmother did not interact with the child — although paternal aunts and uncles had done so. Following the social media post, the mother testified that she further separated herself from the paternal family and does not allow the grandmother to see the child because she feels disrespected and that the two of them "don't really have a bond."[FN2]
Based on the foregoing, we conclude that the record provides a sound and substantial basis for Family Court's determination that it was in the child's best interests to grant the grandmother visitation rights (see Matter of Anne MM. v Vasiliki NN., 203 AD3d 1476, 1481 [3d Dept 2022]; see also Matter of Daniel RR. v Heather RR., 221 AD3d at 1303; Matter of Melissa X. v Javon Y., 200 AD3d 1451, 1453 [3d Dept 2021]). Both the mother and the grandmother acknowledged a cordial relationship between one another and that the grandmother had an established, positive and nurturing relationship with the child before the father's unexpected passing — even though the COVID-19 pandemic limited social interactions (see Matter of Susan II. v Laura JJ., 176 AD3d at 1328-1329). The record reveals that the parties' [*3]relationship broke down due to the trauma from the father's unexpected death and "disparaging and derogatory comments" made by members of the paternal family. To that point, the gravamen of the mother's objections to the grandmother's requests for visitation were premised on inflammatory comments made during the planning of funeral services and on social media — neither of which the grandmother appeared to be the driver of the acrimony, as she repeatedly attempted to mend her relationship with the mother by advising that she was available to help or speak with the mother, and by offering prayers or well-wishes to the mother (see Matter of Dawn II. v Natyssa JJ., 223 AD3d at 984; Matter of Neilene P. v Lynne Q., 183 AD3d 1023, 1027 [3d Dept 2020]; Matter of Mastronardi v Milano-Granito, 159 AD3d 907, 908 [2d Dept 2018]). Furthermore, the appellate attorney for the child highlights many of these points and supports visitation, contending that the record fails to show "the grandmother to be anything other than a fit grandmother," and our review confirms same.
Although it is clear that the grandmother should be awarded visitation with the child, we do, however, agree with the appellate attorney for the child that the matter should be remitted to Family Court because — although well-intentioned — the current visitation schedule is not in the best interests of the child (see Matter of Steven OO. v Amber PP., 227 AD3d 1154, 1157-1158 [3d Dept 2024]). Specifically, the documentary and testimonial evidence adduced at trial demonstrated that the grandmother has not met with the child since November 2022 — when the child was two years old.[FN3] The mother's testimony further indicated that, when the grandmother did have an opportunity to meet with the child at a different family event, the grandmother failed to interact with the child. Given the record before us, we share the appellate attorney for the child's concern that unsupervised visitation and the five-hour duration is inappropriate at this time because the grandmother has become an unfamiliar person to the child. We further observe that, for the two visits scheduled between the hearing days, the mother shortened the duration of the first visit in half and chose locations that were unsatisfactory to the grandmother. Although this Court is empowered to independently review the record and modify the visitation schedule, the passage of time and gaps in the record do not allow us to do so here, and therefore we remit the matter to Family Court for a new hearing limited to addressing the particulars of a new visitation schedule (see Matter of Jill Q. v James R., 185 AD3d 1106, 1110 [3d Dept 2020]; see also Matter of Theressa M. v Gaddiel M., 228 AD3d 1040, 1041 [3d Dept 2024]; Nicole L. v David M., 195 AD3d 1058, 1064 [3d Dept 2021]). In doing so, we encourage Family Court to consider the type of visitation (e.g., supervised or unsupervised visitation, etc.), the duration (e.g., a graduated schedule), the location [*4]of such visitation (e.g., where the child and the grandmother have an opportunity to bond), the child's age and any other provisions that would develop and/or promote a meaningful relationship between the grandmother and the child (see Matter of Benjamin V. v Shantika W., 207 AD3d 1017, 1021 [3d Dept 2022]).
Finally, we are unpersuaded by the mother's contentions that she was deprived of the effective assistance of counsel because her attorney did not corroborate her claim "that the paternal family had made defamatory comments about her." Although it is true that the social media post was ultimately not offered into evidence, it is unclear how this post impacted the grandmother — who had no role in the creation of it — or otherwise supported the mother's contentions. Moreover, the record contains several instances where the mother was able to testify as to certain disparaging remarks made about her without objection. Therefore, in considering counsel's overall representation, which included giving an opening statement and thorough written summation, cross-examining the grandmother and interposing objections, we are satisfied that the mother was not deprived of the effective assistance of counsel (see Matter of Laura E. v Matthew E., 226 AD3d 1117, 1118-1119 [3d Dept 2024]). We have examined the parties' remaining contentions and have found them to be without merit or rendered academic.
Garry, P.J., Egan Jr., Clark and McShan, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as provided petitioner unsupervised visitation for five hours biweekly; matter remitted to the Family Court of Schenectady County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: Due to the hospital's COVID-19 restrictions, the grandmother testified that guests were not permitted to go to the hospital for the birth of the child in mid-2020.

Footnote 2: The hearing was held over two days. After the first day of testimony, Family Court issued an interim order permitting the grandmother to visit with the child once around Thanksgiving and once around Christmas, both to last two hours. The first visit occurred at a popular indoor children's arcade and restaurant, where the mother permitted the visit to last one hour and all of her children came to play at the establishment — it was not just the grandmother and the child, and the grandmother testified that it was not an appropriate setting for her to foster a relationship with the child. For the second visit, the mother chose the visit to be at a mall with an aquarium, but the grandmother declined to attend because she "chose not to entertain having a visitation in a mall doing Christmas gifts" with the child.

Footnote 3: At oral argument, each party's appellate attorney indicated that they did not believe that the grandmother had visited with the child since the order was appealed.