Matter of Daniel C. v Joanne C. (2020 NY Slip Op 02211)





Matter of Daniel C. v Joanne C.


2020 NY Slip Op 02211


Decided on April 9, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 9, 2020

527025

[*1]In the Matter of Daniel C., Appellant- Respondent,
v
Joanne C., Respondent- Appellant.

Calendar Date: February 21, 2020

Before: Egan Jr., J.P., Lynch, Devine, Aarons and Colangelo, JJ.


Adam H. Van Buskirk, Auburn, for appellant-respondent.
Karen A. Leahy, Cortland, for respondent-appellant.
Donna C. Chin, New York City, attorney for the children.



Colangelo, J.
Cross appeals from an order of the Family Court of Broome County (Connerton, J.), entered June 11, 2018, which partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior custody order.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of two children (born in 2007 and 2008). The parties have had joint legal custody of the children since a 2011 order, entered upon their stipulation, with primary residential custody with the mother and split parenting time as the parties agreed. In 2013, an order was entered on the parties' stipulation in which that custodial arrangement was continued and the father was given parenting time from Friday evening until Sunday evening on alternating weekends, and the mother was directed to not permit her then-boyfriend to discipline the children due to domestic violence. In 2017, the father filed this modification petition seeking primary residential custody, after the children witnessed the mother being physically abused by her then live-in boyfriend (hereinafter the ex-boyfriend), with whom the mother has one child. Family Court issued a temporary order directing that the ex-boyfriend not have "any access" to the children.
After a fact-finding hearing, at which the parties were the only witnesses, and an in camera Lincoln hearing with the children in 2018, Family Court, finding a change in circumstances, continued joint legal custody but partially granted the father's petition by amending the parenting schedule. The amended schedule provided that, each week, the children would be in the care of the father from Thursday after school until Sunday evening, and in the care of the mother from Sunday evening until they go to school on Thursday morning.[FN1] The parties cross-appealed. The father, supported by the attorney for the children, argues that Family Court should have awarded him sole, primary residential custody given the domestic violence in the mother's home. The mother argues that the court erred in finding a change in circumstances in that she replied appropriately to the domestic violence, and that the modified parenting schedule is not in the best interests of the children, as it fails to provide her with any full non-school days with the children.
While this appeal was pending, Family Court issued an order in May 2019 on the parties' cross petitions seeking to modify the 2018 custody order. The court, focusing on the transportation difficulties that the father was experiencing and the mother's unwillingness to assist, modified the physical custody schedule so that the children will be with the father from Friday after school until Sunday night each week, and with the mother the remaining time; the mother was also given the second weekend of each month and, on those weekends, the father will have the children from Monday after school until Tuesday morning. The court assigned specific responsibilities to each parent for transporting the children between homes.
Initially, this Court takes judicial notice of Family Court's 2019 custody order issued subsequent to the appealed-from 2018 order (see Matter of Christopher Y. v Sheila Z., 173 AD3d 1396, 1397 [2019]). However, we disagree with the mother that the 2019 order renders the cross appeals moot. The 2019 order — which primarily addressed the father's difficulty transporting the children to the mother's home to meet the school bus on Fridays,[FN2] as contemplated in the appealed-from order — continued joint legal custody and only adjusted parenting time to avoid the Friday bus problem, assigned transportation duties and otherwise continued the terms of the 2018 order. Inasmuch as the 2019 order did not supersede the appealed-from order, only adjusting the parenting schedule to ease transportation difficulties, the parties' cross appeals are not moot, with one exception [FN3] (see Matter of Christopher Y. v Sheila Z., 173 AD3d at 1397; Matter of Blagg v Downey, 132 AD3d 1078, 1079 [2015]).[FN4]
Addressing the merits of the parties' contentions, we affirm. "A party seeking modification of a prior order of custody must demonstrate first, that there has been a change in circumstances since the prior order and, then, if such a change occurred, that the best interests of the child[ren] would be served by a modification of that order" (Matter of Aimee T. v Ryan U., 173 AD3d 1377, 1378 [2019] [internal quotation marks and citations omitted]; see Matter of Kanya J. v Christopher K., 175 AD3d 760, 761 [2019], lvs denied 34 NY3d 905, 906 [2019]). It was undisputed that the mother's ex-boyfriend beat the mother in front of the children at their home in November 2017, prompting the father to bring this modification petition. Although the mother removed the children from her home, taking them to the father's apartment for several days until the ex-boyfriend moved out, and sought a temporary order of protection, we agree with Family Court's finding that this and other incidents of domestic violence against the mother since the 2013 order constituted a change in circumstances (see Matter of Boisvenue v Gamboa, 166 AD3d 1411, 1412 [2018]; Matter of Sue-Je-F. v Alan G., 166 AD3d 1360, 1363 [2018]).[FN5]
"Factors to be considered in a best interests analysis include maintaining stability in the child[ren]'s li[ves], the quality of the respective home environments, the length of time the present custody arrangement has been in place and each party's past performance, relative fitness and ability to provide for and guide the child[ren]'s intellectual and emotional development" (Matter of Daniel XX. v Heather WW., 180 AD3d 1166, 1166 [2020] [internal quotation marks and citations omitted]; see Matter of Zaida DD. v Noel EE., 177 AD3d 1220, 1220 [2019]). The father testified that he lives with his girlfriend of six years and their two children, ages four and six at the time of the hearing, in a two-bedroom apartment in the City of Binghamton, Broome County, using the dining room as a third bedroom, and that he will get a bigger place if his request for sole residential custody of the children is granted. His girlfriend works, earning $300 to $500 per week; he stays home with the children and does not work or drive, and collects supplemental security income (hereinafter SSI) due to a brain injury nine years earlier as a result of which, he explained, it takes "a little longer to pick up on things." The father requested to have the children full time based upon the recurring violence in the mother's house, noting that police had been called at least four times and that he has heard screaming in the house when he dropped the children off. According to the father, the mother has been letting the children stay with him every weekend, for nearly all of the recent summers and sometimes during the week when there is no school. He testified that the children often wore clothing and shoes that were too small, and that sometimes he has purchased what they need and pays for their activities, although he has not paid any child support. He indicated that he engages in family and recreational activities with the children and that the mother is not active with them due to her social anxiety.
The younger son, who was diagnosed with autism and is hearing impaired, attends a special university-based school in Binghamton, which runs through the summer, but has been considered for placement in the local school district. The older son has been diagnosed with a learning disability and attends school in the mother's school district. The father recognized that a change in residential custody may require a change in the school district, at least for the older child, and that he would support the children using their SSI benefits.[FN6] The father testified that he was not made aware of the children's medical or educational appointments, although it was not clear what efforts he made to be so informed.[FN7]
The mother testified that she lives in a three-bedroom house with her children [FN8] and a roommate who lives in the basement, and that she works when she has childcare. She supports her household primarily on the children's monthly SSI of $756 each. She recently finished schooling to be a medical assistant and expects to be employed full time. She has been the children's primary caretaker and attends to their medical and educational needs. The mother claimed that the father has not involved himself in those needs. She permitted the children to be with the father many weekends and "whenever he wants," which assisted her schooling, and that he recently had them for half of the summers. She acknowledged the domestic violence history in her home and that she had failed to follow up in obtaining a permanent order of protection against her ex-boyfriend after the November 2017 incident. The record supports Family Court's finding that she "minimizes the domestic violence that has occurred and the effect that it may have on the stability of her household and[,] potentially, the health and well-being of the children." The ex-boyfriend moved out and comes to pick up their mutual child on weekends, when the subject children are with the father. Although she has anxiety and depression for which she is medicated and does not do well around groups of people or take the children to public places like parks, she indicated that she helps the older child with his homework and engages in some activities with them.
Deferring to Family Court's fact findings and "broad discretion in determining the best interests of the child[ren]," we find that the court's determination not to grant the father sole residential custody has a sound and substantial basis in the record, as the mother has been their primary caretaker and has attended to their medical, special and educational needs (Matter of Zaida DD. v Noel EE., 177 AD3d at 1220; see Matter of Dwayne S. v Antonia T., 170 AD3d 1451, 1452 [2019]). Although the mother minimized the very real potential harm caused to the children by the domestic violence, she successfully used the father as a support system to protect the children following the November 2017 incident and removed the perpetrating ex-boyfriend from her home. As of the hearing, the domestic violence problem had been resolved.[FN9] Moreover, the modified parenting schedule, as ordered and as amended in 2019, afforded the father regular, increased weekly time with the children and provided weekend time with the mother. The parties' history reflects that they were admirably flexible about the parenting schedule, accommodating the mother's needs and the father's desire for more time, and that the children were frequently with him for periods well beyond the prior 2013 court order. Under these circumstances, we discern no basis upon which to disturb the court's 2018 custody order. The parties are strongly encouraged to continue to work cooperatively to co-parent the children and act in their best interests.
Finally, to the extent that the attorney for the children argues that Family Court should have designated the mother's residence as the place of the children's residence for purposes of the Education Law, this contention is unpreserved as it was not raised before Family Court and, moreover, the attorney for the children did not appeal from the 2018 order (see Matter of Carrie ZZ. v Aaron YY., 178 AD3d 1291, 1293 [2019]; Matter of Porter-Spaulding v Spaulding, 164 AD3d 974, 975 [2018]). The further argument that the court erred in its 2019 order — in referencing when a change in school districts would be required — is not before us.
Egan Jr., J.P., Lynch, Devine and Aarons, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Family Court's 2018 order referred to the children being in each parent's "primary care" during their respective amended scheduled parenting time, as designated in the order. It is unclear if this represents a change to the parents having shared residential custody, as the attorney for the children interpreted the order, or if primary residential custody remained with the mother. It is noted that the subsequent 2019 Family Court order, discussed infra, does not refer to this issue with any clarity. As this ambiguity is not dispositive of the issues raised on appeal, it will not be addressed.

Footnote 2: The father does not drive due to medical reasons and had difficulty in the morning using public transportation to get the children to the bus stop at the mother's home. Although she lived only two miles away, Family Court found that the mother had been unwilling to assist the father with transporting the children.

Footnote 3: Although the mother objects to the elimination of her non-school day, weekend time with the children, this claim is now moot given that the 2019 order provided her with weekend parenting time.

Footnote 4: We take no position on the merits of the 2019 order, from which no appeal has been taken.

Footnote 5: It is noted that the 2013 custody order was entered upon the consent of the parties and it is, therefore, entitled to less weight than a determination following an evidentiary hearing (see Matter of Mary BB. v George CC., 141 AD3d 759, 760 [2016]).

Footnote 6: The brief for the attorney for the children represents that both children are now attending school in the mother's school district.

Footnote 7: The record reflects that the father is a registered sex offender, although no facts were adduced on that issue. A search of the state sex offender registry discloses that he is a risk level two sex offender.

Footnote 8: In addition to the parties' two children, the mother has a third child, whose father is the ex-boyfriend, and this child lives with the mother.

Footnote 9: Notably, Family Court reiterated that joint legal custody requires the mother to keep the father apprised of the welfare of the children, including any "verbal or physical violence" in her home. Further, the mother "should permit [the father] to care for the children" when she is unable to or in need of support. Should there be a recurrence of domestic violence in the mother's home, a modification of custody petition could be pursued.