Matter of Clayton J. v Kay-Lyne K. (2020 NY Slip Op 03959)





Matter of Clayton J. v Kay-Lyne K.


2020 NY Slip Op 03959


Decided on July 16, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: July 16, 2020

528061

[*1]In the Matter of Clayton J., Respondent,
v
Kay-Lyne K., Appellant. (And Another Related Proceeding.)

Calendar Date: June 8, 2020

Before: Egan Jr., J.P., Lynch, Clark, Pritzker and Reynolds Fitzgerald, JJ.


Rural Law Center of New York, Castleton (Kristin A. Bluvas of counsel), for appellant.
Christopher Hammond, Cooperstown, for respondent.
William L. Koslosky, Utica, attorney for the children.



Pritzker, J.
Appeal from an order of the Family Court of Otsego County (Lambert, J.), entered December 7, 2018, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the unmarried parents of two daughters (born in 2011 and 2012). By an October 2017 order upon consent, the parties were granted joint legal and physical custody of the children; the children resided with the father one week and the mother the next, with exchanges occurring every Sunday morning. In April 2018, the father filed a modification petition seeking primary residential custody. Soon thereafter, the mother filed a modification petition seeking a change in custody such that the children would live with her Monday through Friday with the father having weekend visitation. Following fact-finding and Lincoln hearings, Family Court found that a change in circumstances had occurred and that it was in the best interests of the children to grant the father sole legal and primary physical custody with the mother having weekend visitation, as well as any additional visitation agreed on by the parties. The mother appeals.
The parties do not dispute that a change in circumstances existed since the entry of the October 2017 order; therefore, we focus our inquiry on whether Family Court's decision served the best interests of the children (see Matter of Sherrod U. v Sheryl V., 181 AD3d 1069, 1069 [2020]; Matter of Joseph H. v Elizabeth I., 159 AD3d 1067, 1068 [2018]). In making a determination as to best interests, the court must consider, among other factors, the home environment of each parent, the need for stability in the children's lives, the parents' past performance and ability to provide for the children, the children's wishes and the willingness of each parent to foster a positive relationship between the children and the other parent (see Matter of Daniel C. v Joanne C., 182 AD3d 711, 713 [2020]; Matter of Payne v Montano, 166 AD3d 1342, 1345 [2018]). "We defer to the court's factual findings and resolution of witness credibility, and its determination will not be disturbed if supported by a sound and substantial basis in the record" (Matter of Sherrod U. v Sheryl V., 181 AD3d at 1070 [citations omitted]; see Matter of Damascus LL. v Janelle MM., 176 AD3d 1408, 1411 [2019]).
The record reveals, as Family Court found, that both parents are "fit, loving and caring parents." The father testified that he currently resides in a four-bedroom house with the children — each of whom has her own bedroom — his fiancÉe and her two children. The father testified that the children have a positive relationship with his fiancÉe and her children, and that, although they have some "spats," they play together well.[FN1] The father works from 6:45 a.m. to 3:30 p.m. Monday through Friday. The children take the bus to school in the morning and are picked up from school by his fiancÉe because the mother will not grant the necessary consent for the bus to drop the children off at the father's house. The father testified that the children are in a "sad state" after exchanges, which he attributes to the number of men with whom the mother has had relationships. The father also testified that he was concerned that the mother had been bringing the children to stay at her current boyfriend's home and had left the children with her boyfriend's 14-year-old son. The father testified that he and the mother have poor communication, and the mother did not notify him that she was moving, about the children's medical appointments or about non-school related activities. The father admitted that he did not want to bring the children to Girl Scout activities during the time that they resided with him. The father also voiced concerns over the mother not monitoring the children's hygiene when they resided with her, which was leading to the older child having issues.
The mother testified that she resides in a two-bedroom trailer where the children share a room, but she spends most nights at the home of her boyfriend with the children. The mother testified that, at her boyfriend's house, the children have the choice of either sleeping together on the couch or in a spare room. The mother explained that her boyfriend has three sons who live with him and they were 16, 10 and 3 years old at the time of the hearing. She admitted to leaving the children with the boyfriend's oldest son, but never for more than an hour. The mother testified to her various moves, specifically maintaining that she had lived with her mother at the time of the October 2017 order and had then moved into an apartment, which she was forced to abruptly move from due to a mold issue and, therefore, she was not able to give the father advanced notice that she would be moving. The mother alleged in her testimony that the children are generally "very emotional" when they return from the father's house because the father is unable to spend much time with them. Notably, the mother admitted that she was arrested twice for driving while intoxicated and specifically wished to remove from the October 2017 order the provision that neither parent is permitted to consume alcohol during his or her residential custody.
The record demonstrates that the mother has introduced multiple men into the children's lives. Additionally, the mother stated that the children needed "a stable environment" during school rather than "bouncing back and forth" between homes. At the same time, however, she admitted to bringing the children from her home to her boyfriend's home most nights, with the children sleeping together on the couch. Based upon the foregoing, and deferring to Family Court's factual and credibility determinations, there is a sound and substantial basis in the record to support Family Court's grant of sole legal and primary physical custody to the father (see Matter of Sabrina B. v Jeffrey B., 179 AD3d 1339, 1342-1343 [2020]; Matter of Ian G. v Crystal F., 174 AD3d 985, 987 [2019], lv denied 34 NY3d 903 [2019]).
Egan Jr., J.P., Lynch, Clark and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: There was testimony regarding an incident during which the fiancÉe's son pushed the younger child. The father testified that the son was disciplined. The father also admitted that the son has anger issues, but has been seeing a counselor to address these issues.