Matter of Jason VV. v Brittany XX. (2024 NY Slip Op 04424)

Matter of Jason VV. v Brittany XX.

2024 NY Slip Op 04424

Decided on September 12, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 12, 2024

CV-23-0469
[*1]In the Matter of Jason VV., Appellant,
v
Brittany XX., Respondent. (Proceeding No. 1.) (And Another Related Proceeding.)
In the Matter of Brittany XX., Respondent,
v
Jason VV., Appellant. (Proceeding No. 3.) (And Another Related Proceeding.)

Calendar Date:August 15, 2024

Before:Garry, P.J., Egan Jr., Clark, Fisher and McShan, JJ.

Matthew C. Hug, Albany, for appellant.
Sandra M. Colatosti, Albany, for respondent.
John D. Eggleston, Saratoga Springs, attorney for the child.
Christopher Obstarczyk, Latham, attorney for the child.

Egan Jr., J.
Appeal from an order of the Family Court of Saratoga County (Paul Pelagalli, J.), entered February 27, 2023, which, among other things, granted petitioner's application, in proceeding No. 3 pursuant to Family Ct Act article 6, to modify a prior order of custody.
Jason VV. (hereinafter the father) and Brittany XX. (hereinafter the mother) are the parents of two children (born in 2011 and 2014). The parties lived in Florida when the children were born. The mother relocated to New York with the children after the parties split up, and she, her husband and the children took up residence in Saratoga County in 2018. The mother and her husband divorced at some point, but the mother and the children remained at the same residence at all relevant times. In November 2019, a Florida court issued an order and judgment in which it resolved issues of paternity and made awards of child custody and child support. As is relevant here, the 2019 order and accompanying parenting plan awarded the equivalent of joint legal custody to the parties and primary physical placement to the mother. The father was granted specified parenting time, with the mother responsible for the travel expenses of the children, and the father was entitled to daily electronic communication with the children.
The record reflects that both children had mental health crises in the spring of 2021 that resulted in the mother consenting to their removal by the Saratoga County Department of Social Services (hereinafter DSS) (see Family Ct Act § 1021). The mother, who had been struggling to obtain appropriate counseling services for the children, consented to the temporary removal of the children so that they could be placed in a facility where they would be evaluated and receive mental health treatment.
In July 2021, alleging that the mother had neither communicated with him about the decision to voluntarily place the children with DSS nor facilitated the parenting time to which he was entitled, the father filed petitions alleging that the mother had violated the provisions of the 2019 order and seeking to modify the custodial arrangement to award him sole custody of the children. The mother filed, as is relevant here, a competing modification petition in December 2021. Following a prolonged fact-finding hearing, which included a Lincoln hearing with both children, Family Court issued a February 2023 order in which it dismissed the father's petitions and granted the mother's cross-petition. Family Court determined, in particular, that the father had not shown the mother to have committed a violation of the 2019 order. It also determined that a change in circumstances had occurred since the issuance of that order and that the best interests of the children lie in awarding the mother sole legal and primary physical custody and granting the father supervised parenting time in New York as could be agreed upon by the parties. The father appeals.
We affirm. Beginning with Family Court's modification [*2]of the custodial arrangement, as there is no dispute that a change in circumstances occurred since the entry of the November 2019 order warranting an assessment of what custodial arrangement was in the best interests of the children, we focus our attention upon the issue of whether the modification furthered those interests (see Matter of Ronald R. v Natasha FF., 217 AD3d 1163, 1164 [3d Dept 2023]; Matter of Clayton J. v Kay-Lyne K., 185 AD3d 1243, 1244 [3d Dept 2020]). In assessing the best interests of the children, a variety of factors must be considered, including the quality of the home environment of each parent, the need for stability in the children's lives, the past performance of the parents and their ability to provide for the children, the wishes of the children and the degree to which each parent is willing to foster a positive relationship between the children and the other parent (see Matter of Thomas BB. v Jessica YY., 219 AD3d 1578, 1580 [3d Dept 2023]; Matter of Ronald R. v Natasha FF., 217 AD3d at 1164). We defer to the factual findings and credibility determinations of Family Court in making that assessment and will not disturb its broad discretion in rendering a custodial determination so long as such is supported by a sound and substantial basis in the record (see Matter of Thomas BB. v Jessica YY., 219 AD3d at 1580; Matter of Chad KK. v Jennifer LL., 219 AD3d 1581, 1583 [3d Dept 2023]; Matter of Mark B. v Tameka D., 183 AD3d 1038, 1041 [3d Dept 2020]).
The hearing evidence shows that the children have been in the care of the mother since at least 2017. Although there had been two indicated reports of child abuse and/or maltreatment against the mother at some point, the timing and nature of those reports was unclear, and the proof gave no reason to believe that the mother's care for the children was inadequate at the time of the hearing. As for the April 2021 incidents that led to the children being placed in the care of DSS, the mother explained that she had been struggling to obtain counseling and other services for the children on an outpatient basis and elected to place them because DSS had secured the evaluation and care for them that they obviously needed. She added that she did not contact the father at that point, but that she did provide his contact information to DSS officials so that they could do so. The testimony of the mother and the DSS caseworker assigned to the family reflected that the mother had complied with all treatment recommendations, had herself engaged in mental health treatment and parenting classes, and had emerged with improved skills to care for the children. The record left no doubt that the children did continue to face mental health issues that have resulted in occasional setbacks and that they will require ongoing treatment. It nevertheless appeared that the children could safely be returned to the mother's care, and they both had been by the time of the hearing, with the family receiving ongoing [*3]supportive services from DSS and the mother arranging for schooling with appropriate modifications for both children.
In contrast to that portrait of an engaged mother who was doing her best to address the needs of two obviously troubled children and was making progress in doing so, the father had not seen the children in person since 2017, had only intermittently exercised his right to video calls with them, and was in arrears on his child support obligations. His interest in having more contact with the children was open to question, with the mother testifying that the father had never come to New York to see the children under the terms of the 2019 order and had refused to pick up the children at the airport when she offered to fly them to Florida for parenting time with him in the spring of 2020. Even more troubling was an incident in which the mother actually brought the children to Florida for Thanksgiving in 2019, at which time the father passed up the chance to have parenting time with the children because he refused to pick the children up at a nearby bus station after the mother declined to drop them off at his residence due to his history of domestic violence toward her. In view of this longstanding lack of interest in dealing with the children, the proof unsurprisingly reflected that the children often did not want to talk to the father on the intermittent occasions when he contacted them via Skype. The record also gave serious doubts as to whether the father would adequately address the mental health challenges of the children if they were in his care, as he had a combative relationship with DSS officials and the mental health providers who dealt with the children and, notably, made clear that he did not want therapy to continue with the children's current providers and did not think that they needed the medication that they had been prescribed. Finally, although the reasons for such were in some dispute, both parents acknowledged that their ability to communicate for the benefit of the children had broken down.
To be sure, the father attempted to pin the blame for his absence from the children's lives on the mother, suggesting that she had not alerted him to developments with the children and was not responsive to his limited efforts to contact her. We nevertheless defer to the assessment of Family Court that the mother's testimony was credible — and that the father's testimony was not — and perceive a sound and substantial basis in the record for Family Court's determination that the best interests of the children lie in an award of sole legal and physical custody to the mother and supervised parenting time for the father (see Matter of Warda NN. v Muhammad OO., 217 AD3d 1086, 1089-1090 [3d Dept 2023]; Matter of Shokralla v Banks, 130 AD3d 1263, 1264-1265 [3d Dept 2015]; Matter of VanBuren v Assenza, 110 AD3d 1284, 1284-1285 [3d Dept 2013]).
Finally, with regard to the dismissal of the father's violation petition, he was obliged [*4]to "establish, by clear and convincing evidence, that there was a lawful court order in effect with a clear and unequivocal mandate, that the person who allegedly violated the order had actual knowledge of the order's terms, [and] that the alleged violator's actions or failure to act defeated, impaired, impeded or prejudiced a right of the proponent" (Matter of Carl KK. v Michelle JJ., 175 AD3d 1627, 1628 [3d Dept 2019]; accord Matter of Timothy RR. v Peggy SS., 206 AD3d 1123, 1124 [3d Dept 2022]). The hearing evidence reflected that the mother gave the father's contact information to DSS so that the agency could alert him to the voluntary placement of the children in 2021, and that he did receive notification from DSS. Meanwhile, the 2019 order only obliged the mother to cooperate so that the father was authorized to directly obtain information about the medical and educational situation of the children from their school and medical providers. The record reflected that the mother did act to notify the father of her "emergency decision" to place the children with DSS as required under the 2019 order, in other words, and the father provided no reason to believe that she ever attempted to prevent him from exercising his right under that order to obtain medical and educational information about the children. As such, "paying the appropriate deference to Family Court's credibility determinations, we find that the court did not abuse its discretion in finding" no violation of the 2019 order (Matter of Craig K. v Michelle K., 218 AD3d 977, 980 [3d Dept 2023]).
Garry, P.J., Clark, Fisher and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.