Matter of Jillian PP. v Christopher C.

2026 NY Slip Op 02903

May 7, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Jillian PP., Appellant,

v

Christopher C., Respondent. (And Another Related Proceeding.)

Decided and Entered:May 7, 2026

CV-24-1825

Calendar Date: March 25, 2026

Before: Garry, P.J., Reynolds Fitzgerald, Powers, Mackey And Ryba, JJ.

Garufi Law, PC, Binghamton (Debra J. Cohn of counsel), for appellant.

Whiteman Osterman & Hanna LLP, Albany (J. Rochelle Cavanagh of counsel), for respondent.

Lisa K. Miller, McGraw, attorney for the child.

[*1]

Garry, P.J.

Appeal from an order of the Family Court of Chenango County (Frank Revoir Jr., J.), entered October 22, 2024, which partially granted petitioner's applications, in two proceedings pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.

Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of the subject child (born in 2017). The parties most recently operated under a December 2020 stipulation regarding custody, which was so-ordered and then entered in January 2021, pursuant to which they shared physical custody of the child on a rotating schedule. Days before that order was entered, another child of the father (born in 2016; hereinafter the half brother) reported that the father had sexually abused him during a visit. It is not disputed that the subject child was present at that visit. The mother of the half brother promptly commenced a custody modification proceeding in Otsego County to suspend the father's custodial time with that child. On that same day, the mother filed a custody modification petition in Chenango County seeking to suspend the father's custodial time with the subject child, citing the allegations made in the Otsego County proceeding and her belief that the child, then three years old, may have also been abused.

A neglect proceeding was thereafter commenced in Otsego County, alleging that the father abused and neglected the half brother and derivatively neglected the subject child. The aspect of the proceeding concerning the subject child was transferred to Chenango County, but, before Otsego County was able to resolve the allegations concerning the half brother, the Chenango County Department of Social Services withdrew its petition. In September 2021, the Otsego County proceedings were resolved by stipulation, whereby the mother of the half brother was granted sole custody of him, the father's contact with that child was indefinitely suspended and the abuse/neglect proceeding was adjourned in contemplation of dismissal. The Chenango County custody matter then proceeded to a hearing. On the eve of said hearing, the parties stipulated to a graduated return to much of the January 2021 order, but with primary physical placement to the mother.

In August 2022, the father's adjournment order expired, and the Otsego County neglect/abuse proceeding was later dismissed. The father subsequently sought to restore his parenting time with the half brother. The half brother's mother opposed and filed a family offense petition regarding the January 2021 abuse. In September 2023, Otsego County Family Court (Lambert, J.) found that the father had engaged in a course of conduct constituting the family offenses of forcible touching (see Penal Law § 130.52 [1]) and sexual abuse in the second degree (see Penal Law § 130.60) against the half brother, the latter of which includes an element of sexual gratification. The father was accordingly denied visitation with the half brother[*2], and a three-year order of protection was entered, on consent, prohibiting the father from contacting that child.

Meanwhile, in July 2023, during the pendency of the Otsego County petitions, the father filed a visitation violation petition in Chenango County alleging an ongoing dispute with the mother over the child's summer visitation schedule. In response, the mother filed the first of the subject modification petitions seeking sole custody and suspension of the father's custodial time with the child, alleging that the child, then six years old, had begun to make allegations similar to those of the half brother and was exhibiting certain troubling behaviors. Additionally, shortly after the Otsego family offense order was issued, the mother filed a second modification petition, brought on by order to show cause, seeking immediate suspension of the father's custodial time with the child. An ex parte temporary order to that end was initially granted, but, in November 2023, Family Court (Revoir Jr., J.) issued a new temporary order restoring limited daytime contact between the father and the child. Following a fact-finding hearing, Family Court issued an October 2024 order granting the mother sole legal and physical custody of the child but declining to suspend, supervise or otherwise limit or condition the father's visitation with the subject child, including overnights. In fashioning visitation, the court primarily reasoned that there was no evidence that the father abused the subject child and that, because the child wished to have a relationship with the father, terminating such contact would be detrimental to the child's best interests. The mother appeals from the October 2024 order.

During the pendency of this appeal, the parties filed numerous visitation violation petitions against one another. They ultimately reached a global agreement, each admitting to violations, modifying certain visitation provisions contained in the October 2024 order. An order to that end was entered, on consent, in April 2025; that order states that it supersedes and replaces all prior orders. No appeal has been taken from the April 2025 order. The father subsequently moved this Court to dismiss the mother's appeal from the October 2024 order as moot in light of the superseding April 2025 order. We denied that motion without prejudice to the issue being raised upon appeal.

We now must first address the father's renewed claim that this appeal is moot. The father is correct that a subsequent custody order, notably one entered on consent, that expressly provides that it supersedes and replaces all prior orders will generally render an appeal from such prior order moot (see Matter of Andrew YY. v Gabriela XX., 228 AD3d 1091, 1092-1093 [3d Dept 2024]; Matter of Christopher N. v Karoline O., 196 AD3d 774, 776 [3d Dept 2021]; Matter of Chase v Chase, 152 AD3d 996, 996-997 [3d Dept 2017]). Here, however, we have obtained and take judicial notice of the transcript of the [*3]proceeding underlying the April 2025 order (see Matter of Darnell R. v Katie Q., 195 AD3d 1083, 1084 n 1 [3d Dept 2021]; Matter of Justin EE., 153 AD2d 772, 774 [3d Dept 1989], lv denied 75 NY2d 704 [1990]; compare Matter of Chase v Chase, 152 AD3d at 997).FN1 This transcript clearly reveals that neither the parties nor Family Court intended the legal consequences of supersession.

We first note that the April 2025 order arises out of violation — not modification —proceedings. The subject stipulation to resolve the pending violation petitions is thus primarily a remedy for the admitted violations, providing makeup parenting time for missed visits and making "limited . . . modifications" to discrete aspects of the parenting schedule that caused the disputes, particularly with respect to the summer schedule and the child's extracurricular activities. Apart from these targeted adjustments to the schedule, the remainder of the order was purposefully left intact. Although Family Court did remark that the new order would "supercede[ ]" the October 2024 order, it also subsequently proffered that the October 2024 order would "remain[ ]" as "modified" by the current stipulation. Significantly, the transcript further reflects the parties' and the court's shared expectation that this appeal would proceed notwithstanding the stipulation. Indeed, when asked by the mother herself what would happen if this Court reversed the order that is presently before us, Family Court expressly stated that "there's a whole lot of things the Appellate Division can do," including denying the relief requested by the mother, in which case "that order [would] remain[ ] . . . [as] modified . . . by agreement," or "overturn[ing] the first order and throw[ing] everything out." There is no suggestion within the extensive record discussion of any possibility that the stipulation might affect the pending appeal in any manner. In view of the foregoing, we find that the supersession language appearing in the April 2025 order does not accurately reflect the scope of the parties' agreement and that it is therefore erroneous (see generally Hallock v State of New York, 64 NY2d 224, 230 [1984]; Fitzgerald v Fitzgerald, 302 AD2d 356, 356-357 [2d Dept 2003]). In the absence of such language or intent, we reject the father's mootness argument (see Matter of Daniel C. v Joanne C., 182 AD3d 711, 712-713 [3d Dept 2020]; Matter of Christopher Y. v Sheila Z., 173 AD3d 1396, 1397 [3d Dept 2019]; Matter of Blagg v Downey, 132 AD3d 1078, 1078-1079 [3d Dept 2015]).

Turning to the merits, we agree with the mother, and the appellate attorney for the child, that Family Court's visitation award cannot stand. Although courts generally favor frequent and regular visitation with a noncustodial parent (see Strahl v Strahl, 66 AD2d 571, 574 [1979], affd 49 NY2d 1036 [1980]), the guiding principle in fixing any visitation schedule must be the best interests of the child (see Eschbach v Eschbach, 56 NY2d 167, 171 [[*4]1982]). Thus, where a best interests analysis does not find a sound and substantial basis in the record, it will not be upheld (see Matter of Joanna PP. v Ohad PP., 230 AD3d 1445, 1447 [3d Dept 2024]; Matter of Jessica D. v Michael E., 182 AD3d 643, 644 [3d Dept 2020]; Matter of Shirreece AA. v Matthew BB., 166 AD3d 1419, 1424 [3d Dept 2018]).

It is undisputed that the father was previously adjudicated to have sexually abused the half brother during a court-ordered visit when the subject child was also present in his care. Family Court itself characterized the father's conduct as "extremely disturbing" and "of such an egregious nature" as to call into question the father's parental fitness. Indeed, the court could think of "no greater . . . failure to protect a child." Nonetheless, and despite these findings, the court declined to impose any safeguards on the father's visits with the child. In reaching that conclusion, Family Court placed significant weight on the absence of proof that the subject child had been sexually abused by the father, as well as the child's purported desire to maintain a meaningful relationship with the father, the child's alleged maturity and understanding of the findings against the father, the child's supposed ability to self-report the father's misconduct and the father's historic access to the child, particularly since the time of the founded abuse. Upon review, each of these considerations appears problematic.

As an initial matter, it is well established that a parent's sexual abuse of one child reflects a fundamental defect in judgment and impulse control bearing directly on the safety of other children in that parent's care (see Matter of Marino S., 100 NY2d 361, 374 [2003], cert denied 540 US 1059 [2003]). This general principle applies here, notwithstanding the fact that the derivative neglect proceeding concerning the subject child was withdrawn — for reasons unclear from the record and wholly inexplicable. The father's substantiated abuse of the half brother was thus highly probative of his parental fitness and the risk posed to the subject child during visitation, regardless of whether direct abuse of the subject child was established (see generally Matter of Alcantara v Garcia, 180 AD3d 1038, 1039 [2d Dept 2020]; Matter of Velasquez v Kattau, 167 AD3d 912, 912-913 [2d Dept 2018], lv denied 32 NY3d 919 [2019]; Matter of Davis v Davis, 265 AD2d 552, 552-553 [2d Dept 1999]).FN2 That risk is further compounded where, as here, a parent continues to deny the abuse and has demonstrated no acceptance of responsibility (cf. Matter of Abass D. [Mamadou D.], 166 AD3d 517, 517 [1st Dept 2018]; Matter of Tito T. [Carlos T.], 144 AD3d 813, 814 [2d Dept 2016]).

The record also does not support the weight accorded to the child's wishes. No Lincoln hearing was requested, and none was conducted. Family Court instead fully credited the representations of the attorney for the child (hereinafter AFC) regarding the child's wishes [*5]and found that the AFC had not substituted his own judgment. However, the AFC's written summation reflects that he declined to advance the child's request for daytime-only visits because he believed the child to have been "compromised." The court failed to address this inconsistency or determine whether the child's expressed wishes were accurately conveyed (see generally 22 NYCRR 7.2 [d]). The court's finding discrediting the mother's testimony regarding the child's alleged frustrations with the AFC and his related efforts to discharge him — which the AFC also reported, while discrediting and minimizing this attempt — did not cure this tension. Although the child allegedly desired a continued relationship with the father, this similarly does not resolve the issue, as any such desire is not inconsistent with a preference for more limited contact.

Family Court also relied heavily on the child's purported maturity and ability to report any misconduct. The record fails to support the conclusion that the child possessed such capacity. To the contrary, the testimony indicated that, although the child was academically advanced and "street smart," he did not comprehend the seriousness or meaning of sexual abuse at the age of six, despite efforts to that end. The same testimony further suggested that, given the child's anxiety surrounding visitation with the father, he would likely "keep [any abuse] quiet" rather than disclose it. In effect, the court's reasoning placed the burden of protection on the child himself, an approach incompatible with the best interests standard. Nor does the child's unsupervised time with the father since the substantiated abuse supply a sufficient rationale for a continuing lack of safeguards. The fortuitous absence of further reported misconduct does not eliminate the demonstrated risk. In sum, given the father's adjudicated sexual abuse of the half brother, his continued denial of that conduct and the subject child's young age, the record does not support the determination to permit virtually unfettered access to the child.

Although "our fact-finding authority is as broad as that of Family Court" (Matter of Richard CC. v Lacey DD., 243 AD3d 1186, 1189 [3d Dept 2025] [internal quotation marks and citations omitted]), in view of the passage of time since the fact-finding hearing and the lack of any reliable basis for this Court to independently consider the child's wishes (see Matter of Rivera v LaSalle, 84 AD3d 1436, 1440 [3d Dept 2011]), we find the record to be insufficient for us to fashion our own visitation schedule and conditions. We therefore remit the matter for further proceedings before a different judge, including updated fact-finding if necessary, and a custody determination that reflects the best interests of the child. Upon remittal, the court shall appoint a new AFC, as the submissions on appeal raise concerns regarding whether the child's expressed wishes were appropriately advanced. We also encourage the [*6]judge to consider and discuss with the parties whether a Lincoln hearing should be held to aid in ascertaining the child's present wishes.FN3 The terms of Family Court's November 22, 2023 order, providing the father with limited daytime parenting time, shall govern until a new order of custody and visitation is entered.

Reynolds Fitzgerald, Mackey and Ryba, JJ., concur.

Powers, J. (dissenting).

The mootness doctrine is grounded in the principle that a court's "jurisdiction is limited to live controversies. Thus, we may not give advisory opinions or 'pass on academic, hypothetical, moot, or otherwise abstract questions' " (Matter of Parents for Educ. & Religious Liberty in Schs. v Young, 44 NY3d 477, 485 [2025], quoting Matter of Hearst Corp. v Clyne, 50 NY2d 707, 713 [1980]). "[A]n appeal will be considered moot unless the rights of the parties will be directly affected by the determination of the appeal and the interest of the parties is an immediate consequence of the judgment" (Matter of Joshua J. [Tameka J.], 44 NY3d 394, 401 [2025] [internal quotation marks and citations omitted]; see Matter of Kasowitz, Benson, Torres & Friedman, LLP v JPMorgan Chase Bank, N.A., 43 NY3d 180, 185 [2024]).

Where, as here, a subsequent order has been entered modifying the custodial arrangement by which the parties must abide and expressly superseding the prior custody order, any modification we may make to the prior order from which the appeal is taken has no direct affect because "[t]he rights of the parties are instead controlled by the superseding order" (Matter of Joshua J. [Tameka J.], 44 NY3d at 401; cf. Matter of Claflin v Giamporcaro, 75 AD3d 778, 779 [3d Dept 2010], lv denied 15 NY3d 710 [2010]). As a result, this Court has consistently reaffirmed that the entry of a superseding custody order renders an appeal from the prior order moot (see e.g. Matter of Andrew YY. v Gabriela XX., 228 AD3d 1091, 1092-1093 [3d Dept 2024]; Matter of Natasha S. v Ronald R., 168 AD3d 1152, 1152 [3d Dept 2019]; Matter of Chase v Chase, 152 AD3d 996, 997 [3d Dept 2017]; Matter of Mace v Miller, 93 AD3d 1086, 1086 [3d Dept 2012]; Matter of Carella v Ferrara, 9 AD3d 605, 605 [3d Dept 2004]; Matter of Baker v Ratoon, 251 AD2d 921, 922 [3d Dept 1998]).

Yet, because of its disagreement with Family Court, the majority relies upon certain facts to set aside the plain language of the subsequent order so that it does not have the effect of supersession to then address the underlying merits of this appeal. However, we do not possess the authority to modify the terms of an order that has been entered upon stipulation of the parties in the context of a separate proceeding from which an appeal is not before us (see CPLR 5501; cf. CPLR 5517).

Initially, the majority observes that the subsequent order was entered upon pending violation petitions rather than a petition specifically seeking modification of the custodial arrangement. Yet, the parties' 14 competing violation petitions demonstrate [*7]that the custodial arrangement put in place by the October 2024 order had become unworkable, was not conducive to the parties and that further specification in the schedule was necessary (cf. Matter of Angelica CC. v Ronald DD., 220 AD3d 1064, 1067 [3d Dept 2023], lv denied 40 NY3d 909 [2024]). Therefore, even though it does not appear from what is before us that a petition seeking to modify the prior custody order was pending, permitting the parties to stipulate to a modification was in the interest of judicial economy as, without modification, the parties would surely return before the court.FN4 The majority next highlights that the subsequent order left certain terms in place from the October 2024 order. While this is true, it is noteworthy that during that hearing Family Court went through the prior order essentially clause by clause and incorporated the modifications that the parties agreed to. The primary modification was the inclusion of an entirely new parenting time scheme for the child's summer vacations due to the disruptive nature of the prior schedule. Considering this central change, it is difficult for me to agree with the majority's position that setting an entirely new schedule applicable for more than two months out of the year is a "discrete aspect[ ]" of the parenting time schedule (see generally Matter of Erick RR. v Victoria SS., 206 AD3d 1523, 1527 [3d Dept 2022]; Matter of Anne MM. v Vasiliki NN., 203 AD3d 1476, 1481 [3d Dept 2022]).

Most significantly, the majority concludes that the transcript of the hearing "clearly reveals that neither the parties nor Family Court intended the legal consequences of supersession" when the stipulation was placed on the record. The transcript indicates that the parties had been negotiating a resolution to the pending petitions for approximately three hours when the stipulation was ultimately agreed to. Because no attestations have been provided by persons with firsthand knowledge, we cannot be certain what was discussed during this time or what was relayed to petitioner (hereinafter the mother) by her counsel.FN5 Consequently, we are left with only the transcript of the hearing as evidence of the parties' intent. The transcript demonstrates that the court stated on the record that the stipulation would supersede the October 2024 order and no party — each of whom were represented by counsel — took issue with that assertion. When asked whether it was possible to enter a final order with an appeal pending, the court answered implying the affirmative without indicating that doing so would impact the present appeal. Then, when direct inquiry was made as to the impact the new order would have to the pending appeal, the court indicated that "there's a whole lot of things the Appellate Division can do." In the mother's view, which the majority endorses, the foregoing demonstrates that the supersession clause was included in the subsequent order inadvertently and, because its inclusion was unintentional[*8], we may set it aside and ignore its presence when considering the present appeal. However, even crediting that this was a mistake, it must be corrected by way of a request to Family Court made in that proceeding and not by this Court in the context of the present appeal.

As the majority tacitly acknowledges in its reference to Hallock v State of New York (64 NY2d 224 [1984]), if this clause was not intended, the mother was not without recourse. Initially, she could have sought to correct this mistake by way of a timely motion pursuant to CPLR 2221 (see Metlife Home Loans v Levy, 229 AD3d 788, 789 [2d Dept 2024]; Sokoloff v Schor, 176 AD3d 120, 133 [2d Dept 2019]; see also Matter of Brian W. v Mary X., 200 AD3d 1439, 1442 [3d Dept 2021]; Matwijczuk v Matwijczuk, 290 AD2d 854, 855 [3d Dept 2002]). She also could have moved to vacate the prior order pursuant to CPLR 5015 or sought to invoke Family Court's "inherent power to vacate its own [prior order] for sufficient reason and in the interests of substantial justice" (Boyd v Town of N. Elba, 28 AD3d 929, 931 [3d Dept 2006] [internal quotation marks and citations omitted], lv dismissed 7 NY3d 783 [2006]). Notably, pursuant to that discretionary authority, "courts are not limited to vacating a judgment or order pursuant to the enumerated grounds set forth in CPLR 5015" (Briggs v Fresenius, 247 AD3d 1426, 1427 [3d Dept 2026] [internal quotation marks, brackets and citations omitted]). The mother has not sought any of the foregoing forms of relief.

Alternatively, "trial and appellate courts have the discretion to cure mistakes, defects and irregularities that do not affect substantial rights of parties" (Kiker v Nassau County, 85 NY2d 879, 881 [1995]; see CPLR 5019 [a]). This "includ[es] the discretion to clarify a prior order . . . to reflect the true intent of the court's original holding" (Oropallo v Bank of Am. Home Loans, LP, 162 AD3d 1420, 1422 [3d Dept 2018]). This is the "appropriate, and preferred, remedy when a party alleges that an order does not accurately incorporate the terms of a stipulation" (Matter of Patrick UU. v Francesca VV., 213 AD3d 1188, 1189 [3d Dept 2023]; see Fitzgerald v Fitzgerald, 302 AD2d 356, 356-357 [2d Dept 2003]; see also Matter of Brian W. v Mary X., 200 AD3d at 1442; Davis v Davis, 180 AD3d 1263, 1264 [3d Dept 2020]). However, it does not extend to the correction of mistakes made by another judge or in the context of a separate proceeding (see 224 Lefferts Ave. Hous. Dev. Fund Corp. v Haile, 245 AD3d 765, 767 [2d Dept 2026]; Eastern States Well & Pump Servs., LLC v Martin, 239 AD3d 1082, 1084 [3d Dept 2025]). Thus, even accepting that the error in question is not of substance, this potential error must be corrected by Family Court as we are circumscribed from invoking discretionary authority in the context of this appeal to correct a claimed mistake made by that court in the subsequent proceeding (see Matter of Keator v Crippen, 99 AD3d 1047, 1048-1049 [3d Dept 2012[*9]]; see generally Schenectady Trust Co. v Emmons, 290 NY 225, 229 [1943]; Herpe v Herpe, 225 NY 323, 327 [1919]; Meenan v Meenan, 103 AD3d 1277, 1278 [4th Dept 2013]; Reback v Reback, 73 AD3d 890, 890 [2d Dept 2010]; compare Davis v Davis, 180 AD3d at 1264; Matter of MacNeil v Starr, 129 AD3d 1144, 1145-1146 [3d Dept 2015]; Matter of Glazier v Brightly, 81 AD3d 1197, 1199 [3d Dept 2011]).

In sum, the resolution reached by the majority here, "however well intentioned, goes far beyond the scope of CPLR 5019 (a) and, quite simply, the court [is] without authority to act as it [is]" (Vollbrecht v Vollbrecht, 246 AD2d 793, 794 [3d Dept 1998]). "[O]pen court stipulations of settlement are highly favored, binding on the parties and strictly enforced, and generally will not be cast aside absent a showing of fraud, collusion, mistake or accident" (Samonek v Pratt, 112 AD3d 1044, 1045 [3d Dept 2013] [internal quotation marks and citations omitted]; see Boyd v Town of N. Elba, 28 AD3d at 930). The stipulated to order indicates that it "shall supersede and replace all prior orders, temporary and/or otherwise, and resolves all matters pending before [Family Court]." Thus, the plain language of the subsequent order indicates that the supersession clause was stipulated to — likely to make clear that the subsequent order would be the only custody order by which the parties must now abide — and we cannot know for certain the parties' intent absent a motion to correct any erroneous inclusion before Family Court. Thus, I disagree with the majority's decision inasmuch as it, in essence, operates as a workaround of the well-established mootness rule, rather than seeking appropriate correction at the trial level. Accordingly, I would find dismissal of this appeal to be required as the mootness exception does not apply (see Matter of Andrew YY. v Gabriela XX., 228 AD3d at 1092-1093; Matter of Erin J. v Jehrica K., 223 AD3d 1056, 1056-1057 [3d Dept 2024]; Matter of Jordan W. v Amanda X., 223 AD3d 947, 948 [3d Dept 2024]; Matter of Christopher N. v Karoline O., 196 AD3d 774, 776 [3d Dept 2021]; Matter of Natasha S. v Ronald R., 168 AD3d at 1152).

Despite this appeal being moot, I must also set forth my disagreement with the majority's determinations as to the underlying merits. Specifically with respect to its decision to not only remit to a different Family Court judge but also direct the assignment of a new attorney for the child (hereinafter AFC). I initially question whether this relief, which was requested by the appellate AFC but not the mother, may constitute affirmative relief to a nonappealing party (see Matter of Denise VV. v Ian VV., 205 AD3d 1090, 1093 [3d Dept 2022]; Matter of Janeen MM. v Jean-Philippe NN., 183 AD3d 1029, 1030 n 1 [3d Dept 2020], lv dismissed 35 NY3d 1079 [2020]; see generally Hecht v City of New York, 60 NY2d 57, 61-62 [1983]). Assuming, without deciding, that those requests are even properly before this Court, I do not believe either to be [*10]warranted.

In the order underlying this appeal, Family Court characterized the father's conduct against the half brother as egregious and found that it called into question his fitness as a custodian for the child. Yet, at the same time, the court weighed this against the father having enjoyed 50/50 split parenting time throughout most of the child's life without any allegation of inappropriate conduct by the father toward the child and the child's continued denial to social workers and counselors that the father had ever inappropriately touched him. The mother has also fully informed the child of the incident, which occurred when he was three years old, and has continuously instructed the child in the five years since to inform her if anything inappropriate occurs while he is in the father's care. The foregoing does not demonstrate an inability to be fair and impartial on the part of Family Court or that it had prejudged the matter — circumstances which would warrant remittal to a new judge — but, instead, that the court considered the facts before it and utilized its discretion to make the custody determination it believed to be in the best interests of the child (compare Matter of Shayne FF. v Julie GG., 221 AD3d 1202, 1207 [3d Dept 2023]; Matter of Nicole B. v Franklin A., 210 AD3d 1351, 1355 [3d Dept 2022], lv dismissed 39 NY3d 1092 [2023]). Further, the failure to hold a Lincoln hearing is not by itself a sufficient basis to remit this matter to a new judge, especially absent a request from any party involved (see generally Matter of Kalam EE. v Amber EE., 244 AD3d 1523, 1525 [3d Dept 2025]).

With respect to the appointment of a new AFC, it is relevant that Family Court found counsel's advocacy as being reflective of the child's wishes at that time without any substitution of judgment. The fact that the child's appellate counsel now expresses the child's wishes differently is not indicative of an improper substitution of judgment by the AFC below and does not render that representation ineffective. Instead, this may merely represent a change in the child's views in the interim. The AFC's decision not to request a Lincoln hearing and instead place the child's wishes on the record was also reasonable considering that the AFC believed the child to be, at least in part, influenced by the mother (cf. Matter of Williams v Rolf, 144 AD3d 1409, 1415 [3d Dept 2016]). Additionally, the AFC's expression of this belief to the court does not amount to a substitution of judgment considering that the child's wishes were placed on the record. Thus, as there is no evidence that the AFC improperly substituted the child's judgment or failed to zealously advocate on behalf of the child, assignment of new counsel for the child is also not warranted by the record before us (cf. Matter of K.F. v T.E., 244 AD3d 1324, 1327 [3d Dept 2025]; Matter of Muriel v Muriel, 179 AD3d 1529, 1530 [4th Dept 2020], lv denied 35 NY3d 908 [2020]).

For these reasons, I dissent.

ORDERED that the order is reversed, on the law, without costs, and matter remitted to the Family Court of Chenango County for further proceedings not inconsistent with this Court's decision before a different judge, and, pending said proceeding, the terms of the November 22, 2023 order shall remain in effect on a temporary basis.

Footnotes

Footnote 1

We note that the mother alerted this Court to the existence of this transcript and its general contents in opposing the father's motion to dismiss this appeal.

Footnote 2

In that vein, we further find it notable that Family Court took judicial notice of the Otsego County family offense order and detailed findings therein, which reveal that the disclosures made by the elder half brother, to multiple sources, included statements that the subject child was sexually abused in the same manner.

Footnote 3

We recognize that Family Court may have wished to avoid inquiring about the alleged abuse, given the potential for further trauma; however, the most sensitive matters might be avoided while still directly ascertaining the child's wishes.

Footnote 4

We cannot know, based upon what is before us, whether a request for modification of the custody arrangement was not made. Namely, although we have the transcript of the April 18, 2025 hearing and the resulting order, we do not have each of the 14 separate violation petitions that subsequent order indicates the parties had filed.

Footnote 5

Although the mother's current counsel has provided an affirmation, she did not represent the mother during the subsequent proceeding and, therefore, lacks firsthand knowledge as to what occurred during the subsequent proceeding or, more importantly, whether that clause was included intentionally or inadvertently.